# LEONA OLSON v. PURITY BAKING COMPANY AND OTHERS.[1]

April 1, 1932.

No. 28,698.

[1]Reported in 242 N. W. 283.

572

*Lewis, Hunt & Palmer,* for appellant.
*Essling & Bundlie* and *Fryberger, Fulton & Boyle,* for respondent.

HOLT, J.

Gust Kinetz, who was driving an auto truck for defendant from Duluth to the Iron Range, noticing that the generator for the lighting system was not properly charging the battery, stopped on the Miller trunk highway some 23 miles north of Duluth at about 1:30 a. m. on the morning of August 1, 1930, for the purpose of putting some dressing on the belt operating the generator to prevent its slipping. As the truck was thus standing, a Ford sedan driven by plaintiff's brother came up from behind, crashed into the truck, and burst into flames. In the front seat of the Ford beside the driver was plaintiff, and next to her was a Mr. Ostlund. Ostlund was killed outright, and plaintiff was severely burned and otherwise injured. Plaintiff brought this action against appellant, her brother (the driver of the Ford), her mother (the owner thereof), and the insurer of the mother against liability arising out of the operation of the car. Before or during the trial the action was dismissed as to all defendants except appellant, who will hereinafter be designated as defendant.

The complaint charged that defendant's truck "was unlawfully, carelessly, negligently and wrongfully parked and standing on the paved portion of" the highway. Defendant's answer was a general denial, with certain admissions not now important, and containing the defensive allegations that plaintiff's injuries resulted solely from her own and her brother's negligence. The sharply disputed issues of the trial were whether the truck was parked wholly or only with the left wheels on the pavement and whether its tail light was burning. The body of the truck reached some ten feet from the ground, was seven and a half feet wide, and some 19 feet long, painted white. The tail light was near the top of the left-hand corner of the body, about nine and a half feet from the ground. The Ford carried the usual driving headlights and was being driven at a speed of 35 miles an hour. The night was very dark, but there was no evidence of other atmospheric conditions at the point of the accident which would interfere with vision. Plaintiff and her brother both testified that they were looking straight ahead and did not see the truck until they were within so few feet of it that the crash came before there was an opportunity to make a move. Defendant, by experiment and photographs taken during a night of similar darkness, with the truck in practically the same position, and seated with the camera in a Ford of a type like that in which plaintiff rode at the time of the collision, sought to convince the jury that the truck was visible, so that if plaintiff and her brother had used ordinary care they could have discovered it in time to pass safely. Plaintiff offered testimony to the effect that the tail light of the truck was not burning when the collision took place. Defendant adduced testimony that it was lit; but the inference from that testimony was that, owing to the slipping of the generator belt, the battery was weakened and the tail light, as well as the headlights, was dimmer than usual. The verdict was for $6,950, nearly $2,000 of which represents loss of clothing and wages and the cost of hospital, nurse, and medical services. Defendant appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

The errors assigned are too numerous to discuss separately, and we follow the grouping of them which counsel has pursued in the brief. The first relate to rulings during the trial. The incident in respect to the cross-examination and redirect of Harold Olson concerning his testimony in a previous trial of a case growing out of this accident does not afford ground for a new trial. The trial court rectified the error, if any, by directing the jury to disregard the answer to a question objected to. Over objection Harold Olson was permitted to testify that he would have seen the tail light on the truck if there had been one lit. It may be conceded that technically the witness testified to a conclusion and not a fact. Hathaway v. Brown, 22 Minn. 214; McKenzie v. Banks, 94 Minn. 496, 103 N. W. 497. But see the last part of the opinion in Fonda v. St. Paul City Ry. Co. 77 Minn. 336, 79 N. W. 1043. It may also be said in justification of the ruling that it was so difficult for the witness to describe the visibility then existing that it was permissible to state his conclusion or opinion regarding the ability of a person to notice the tail light if it were burning.

"Facts may be submitted to a jury in the form of an opinion when they cannot otherwise be adequately or easily described." 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 3315.

The cross-examination of defendant's manager, Butler, in view of his position, cannot be held to have taken too wide a scope. The court properly restricted the attempted impeachment of Butler.

One Quigley was a witness for plaintiff. He, in company with one Fitch, came to the scene of the collision within a minute or two after it happened. Approaching from the north, they were so near that they heard the crash and saw the Ford burst into flames. Fitch was not a witness; and plaintiff's counsel, over objection, elicited from Quigley that Fitch was an insurance adjuster, and thereafter attempted to make improper use of such evidence. But we think the trial court thwarted counsel in this, so that we are unable to see that any prejudice could have resulted to defendant. As soon as it appeared that Quigley testified only to what he was told by Fitch the court struck the testimony from the record. In

connection with Quigley's examination as a witness, a controversy arose between counsel as to insurance companies' being interested in plaintiff's case as well as defendant's when the court interposed this remark: "So far as the parties to this case are concerned, I take it the insurance company representing the defendant only is interested." In a way defendant's counsel provoked the remark, for he knew that the case had been dismissed as to plaintiff's mother, who carried insurance on the Ford; and just before the court used the quoted words defendant's counsel had stated that an insurance company was interested in the defense. This incident cannot be deemed of sufficient importance to call for a new trial.

Error is assigned upon the refusal of the court to direct a verdict for defendant and the refusal to give two requested instructions. On the proposition that defendant was entitled to a directed verdict are cited Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145; DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350; Weyhe v. Minneapolis St. Ry. Co. 179 Minn. 172, 228 N. W. 754. The first two relate to accidents happening during daylight, where there was no question as to the visibility of the oncoming vehicle. The Weyhe case was one where the plaintiff in the nighttime walked onto a street car track in front of an oncoming street car carrying a brightly burning headlight and was struck down. There could be no conflicting opinions as to her ability to see and avoid the street car. The situation confronting the occupants of the Ford in the case at bar is in our opinion quite different and more like the facts which permitted a recovery in Jacobs v. Belland, 171 Minn. 338, 214 N. W. 55; Forster v. Consumers W. S. Co. 174 Minn. 105, 218 N. W. 249; Knutson v. Farmers Co-op. Creamery, 180 Minn. 116, 230 N. W. 270. The visibility of the truck to those coming up behind it depended upon disputed facts as to whether its tail light was burning, and, even if it was turned on, whether it was dimmed by the weakness of the battery. The condition of the headlights as to brightness had also some effect upon the situation; likewise to what extent the whiteness of the truck blended with the color of the pavement on a dark night. Then again the disputed position of the truck, being wholly on or practically off the pavement, is a factor to be con-

sidered. We think the question of plaintiff's contributory negligence and the defense that her brother's negligence was the sole cause of the collision were both for the jury. Defendant does not claim that its negligence was not properly submitted. Our conclusion that defendant was not entitled to a directed verdict also adversely disposes of its contention that the court erred in refusing to instruct the jury that the driver of the Ford was guilty of negligence as a matter of law and if his negligence was the proximate cause of the collision plaintiff could not recover.

Defendant also assigns as error a refusal to instruct on plaintiff's contributory negligence in the language used in DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350. We think the defendant could not justly ask more or clearer instructions upon the subject than these given:

"The defendant also claims that the plaintiff, Leona Olson, was guilty of negligence proximately contributing to her injury. If she was guilty of negligence proximately contributing to her injury, she cannot recover, no matter though the defendant has been negligent. If in doing what she did, riding in the car as she did, she failed to exercise the degree of care and caution and prudence for her own safety which an ordinarily careful, prudent, and cautious person would have exercised, then she was negligent; and if such negligence proximately contributed to her injury, she cannot recover in this case."

The court then stated that on defendant was the burden of proof as to contributory negligence, and later the court gave three instructions, at defendant's request, upon the same subject: One virtually in the language of the court above quoted; one that if she could or should have seen the truck in time to have warned the driver of the Ford of the danger and in time for him to have avoided the collision she could not recover; and one calling attention to the different items and circumstances to be considered by the jury as bearing upon her negligence, such as weather conditions, speed of the Ford, position and lights of the truck, plaintiff's opportunity

for observation, and conversation or distracting circumstances in the Ford car. (Defendant's requests Nos. 1, 2, and 3.)

Defendant also claims misconduct of Mr. Essling, the one of plaintiff's counsel who examined the witnesses and made the final argument to the jury. Aside from a too minute and searching examination on apparently trivial points and a persistency in reverting to questions which the court had ruled improper, there is nothing particularly objectionable except in the attempt to make something out of the absence of Fitch as a witness, already discussed. Mr. Essling's final argument in full is made a part of the settled case. No part of the argument of opposing counsel appears. We therefore cannot say how far the argument appearing in the record was in answer to the prior argument for defendant. As to misconduct on the final argument, defendant specifies 23 parts or portions thereof as such, but saved the record only as to three parts.

The latest case upon the necessity of timely objection and exception to improper argument to a jury is Moquin v. M. St. P. & S. S. M. Ry. Co. 181 Minn. 56, 231 N. W. 829. In two instances the court told the jury that the objection was well taken. In one instance the court did not rule; but Mr. Essling, as soon as the objection was made, said to the jury: "All right, disregard that," referring to his statement that no light was burning on the truck when the photographs were taken of the truck from the front seat of an approaching Ford sedan some dark night subsequent to the accident, which photographs had been received in evidence to demonstrate the visibility of the truck. As we read the record, the objection to Mr. Essling's last statement was not valid, for it appears that the purpose was to prove with the photographs that even with its tail light not burning the truck was visible. In passing we may say that the most provoking feature of the whole address was the undeserved insinuations that the defendant's attorney had not conducted the defense fairly. Few records indeed have come to this court showing throughout such fair treatment in the cross-examination of an opponent's witnesses, such direct and lawyerlike examination of his own, and such an absence of the usual frivolous objections with which an attorney so often impedes the proof of the

adverse party's case as was displayed by Mr. Hunt in this trial. And it is difficult to understand why an attorney of the experience of Mr. Essling can believe that an argument of the tenor here made serves his client. We think the trial court rightly concluded that ungrounded insinuations against opposing counsel did not prejudice or harm defendant. The jury awarded barely half the damages plaintiff's counsel so vociferously demanded.

Considering the injuries and the terrible sufferings the fractures and burns inflicted, we cannot hold the verdict excessive. The attending doctor estimated the skin upon one-twentieth of the surface of the body was burned, some of the burns being second and third degree burns. She lost five of her front teeth. One of her wrists has an ugly scar. She is a young woman, and the injuries have left her nervous and somewhat reduced in weight. The full movement of the knee joint has not been restored. The burns are likely to continue to give pain and discomfort. Compared with such cases as Tuttle v. Wicklund, 178 Minn. 353, 227 N. W. 203, and Harrsch v. Breilien, 181 Minn. 400, 232 N. W. 710, the damages awarded must be considered modest.

The order should be and is affirmed.

LORING, J. (concurring).

I reluctantly concur in the result. This case suggests to me that the courts by appropriate rule should provide where the closing address of counsel is reported in full that exceptions at its close to objectionable remarks should be deemed seasonably taken. The established rule is adapted to trials where the addresses are not taken down by the reporter. Anyone with experience in trial work knows that repeated interruptions of a closing address are extremely prejudicial to the objecting lawyer. In the interest of fair trials, he should not be required to object until the close of an address which is being reported and about the tenor of which there can be no dispute. Another objection to the present rule is that in its practical workings it goes too far in relieving the presiding judge from keeping counsel within proper limits.

STONE, J. (concurring).

I agree with the concurring opinion of Mr. Justice Loring.