## MARIE ELKINS v. MINNEAPOLIS STREET RAILWAY COMPANY AND ANOTHER.[1]

January 22, 1937.

No. 31,047.

[1]Reported in 270 N. W. 914.

*Ralph T. Boardman* and *John F. Dulebohn,* for appellants.

*Olof L. Bruce,* for respondent.

HILTON, JUSTICE.

Appeal from an order denying defendants' alternative motion for judgment notwithstanding the verdict or for a new trial.

Action to recover damages for wrongful death of plaintiff's decedent, Louis Gilbert Kamrow, arising out of a head-on collision between Kamrow's 1924 Model T Ford coupé and a streetcar owned by the defendant corporation, which at the time of the accident was being operated by the codefendant here, C. Ringness. The jury returned a verdict of $1,000 for the plaintiff.

The accident occurred on Glenwood avenue in Minneapolis. At and near the point of the collision that avenue extends directly east and west. It is double-tracked by the street railway line. At about 11 p. m. December 23, 1933, Kamrow was driving his car westerly on Glenwood; the streetcar was coming easterly on the south tracks and collided with Kamrow's car, part of which was also on the south tracks.

Defendants, in asking for judgment notwithstanding the verdict, argue, first, that they were not negligent in any manner, and, second, that plaintiff was contributorily negligent as a matter of law.

Kamrow, just shortly before the accident, at a speed of about 18 miles an hour, passed one Paetzel, witness for plaintiff, also traveling westerly on Glenwood. Paetzel, his car not working well, followed Kamrow for a short distance, then stopped his car for such time as it took him to lift the hood thereof and attach a wire to a coil (less than a minute and a half). Immediately thereafter the accident occurred.

Glenwood avenue was coated with thin ice over which there was a light snow. It was extremely slippery. In passing Paetzel, Kamrow's car got onto the westbound streetcar tracks. Inside each rail of the tracks was a depression in the paving four to eight inches in width and about two inches in depth, which, like the rest of the street, was coated with ice and snow. Along the inner sides of these depressions were ruts formed from an accumulation of ice and melted snow "packed up on the sides." These "ruts were deep." Kamrow's car, as soon as it passed Paetzel's, began sluing and skidding on the westbound tracks as if Kamrow were making an effort to get over on his right half of the avenue. His car was equipped with small tires, which apparently made it "impossible" to turn to the right and get off the tracks. As a result of the maneuvering, the car slid over onto the center rails of the streetcar tracks, *i. e.*, the south rail of the westbound tracks and the north rail of the eastbound tracks. The wheels of the Ford did not of course straddle the two rails but followed the ruts formed along the sides thereof. There was testimony from which the jury could find that the streetcar and Ford were nearly three blocks apart at the time the Ford first got on the center rails. Kamrow's car was still swerving and twisting in the effort to get out of the ruts. Somewhat over a block later the collision occurred.

The motorman, Ringness, testified that the streetcar was traveling at a speed of 25 miles an hour and that at this speed it could be stopped in about 125 feet. Paetzel stepped off the distance between the point of the impact and the place where the streetcar came to a stop. That was 34 paces or about 102 feet. He also examined the rails and found no place where they were burned from application of brakes; there was no sand on them. Taking this into account

and considering that the streetcar traveled over 100 feet, pushing the Ford that distance after the impact, a finding by the jury that the motorman was not keeping a proper lookout and failed to apply the brakes at all until the time of the actual impact would be justified. Although Kamrow was on his wrong side of the street and in a position of danger, there was evidence that it was apparent that he could not extricate himself. It was the duty of the defendants then to so conduct themselves as to avoid injury to him if at all possible. See Spates v. Gillespie, 191 Minn. 1, 252 N. W. 835. Ringess testified that he saw the Ford approaching. Its lights were on, as was the headlight of the streetcar. Ringness did not admit he saw the Ford on the wrong side of the street, but the jury would have been warranted in finding that it was there and that Ringness should so have seen it. Defendants were bound to exercise such care as the circumstances required. See Luck v. Gregory, 257 Mich. 562, 241 N. W. 862, 244 N. W. 155. It was a question for the jury's determination whether they did. Where a streetcar motorman has failed to keep a proper lookout and because thereof injury is caused to another in a position of danger from which extrication was difficult if not impossible, a finding of negligence by a jury does not violate the rule laid down in Ruddy v. Ingebret, 164 Minn. 40, 43, 204 N. W. 630, 631, 44 A. L. R. 159, that "the law does not impose upon a street railway company a duty incompatible with the ordinary operation of its business." It will not unduly interfere with that business should motormen thereof be required to exercise a greater degree of care toward a party obviously in a position of apparent danger than must be exercised toward a person not so situated.

Defendants argue that Paetzel was so far from the scene of the accident that it would have been impossible for him to observe the facts to which he testified. Most of his testimony went to the condition of the street, the speed of the Ford, and Kamrow's attempt to extricate his car from the rut. All were easily observable. The street was well lighted; there were arc lamps at regular intervals. There were no other cars or buildings to obscure the view. Paetzel was on a slight incline, which put him at somewhat of an advan-

tage. Also, he was only about two short blocks from the place of the impact. It was peculiarly within the province of the jury to determine whether Paetzel, a former locomotive engineer, who had passed several rigid tests given for the express purpose of ascertaining the keenness of his eyes, could observe the matters to which he testified.

Defendants contend that Kamrow suddenly turned to his left from the north side of the avenue as if he were going to cross onto a street intersecting with Glenwood; that this turn was made without any warning and so close to the front of the streetcar that there was not sufficient time to stop it. Paetzel's testimony does not support that theory. Also, it was brought out by both parties, and was illustrated by photographs of the Ford in evidence, that the damage to the Ford was mostly on its left side. This fact would seem to negative the idea of a left turn, for had the Ford so turned it would have been hit on its right side and the damage most likely found there. These were matters for the jury to consider.

Had the jury found that Kamrow was guilty of contributory negligence, that finding might well be sustained, for the case is a close one; but, in view of the fact that he was faced with a difficult and dangerous situation, it was a question of fact whether he exercised the care that a reasonably prudent man would have exercised under the same or similar circumstances. Had he stopped, got out of his car, or done one of numerous other possible acts, perhaps the damage would have been avoided; but that is problematical and a question which the jury was particularly fitted to answer. The well known rule that a deceased person will be presumed to have exercised reasonable care for his own protection is undoubtedly applicable here, especially in view of the circumstance that there was evidence which indicated a fact question as to the degree of care exercised. Carlson v. Duluth St. Ry. Co. 111 Minn. 244, 126 N. W. 825, is not controlling. There, in a head-on collision between a delivery wagon and a streetcar, the driver of the former was killed. The streets were in good condition; there were no ruts which might have prevented the driver from escaping the oncoming trolley, and there was evidence that he was under the influence of intoxicants.

It is assigned as error that the "trial court submitted an alleged issue of the condition of the paving, street, and railway tracks to the jury, without any fact evidence on which such issue could properly be based; and denied appellants' request that this alleged issue be eliminated." In its charge the court stated: "No negligence in this case can be based upon any condition that obtained there with reference to the streets or railway tracks or the paving upon the tracks or streets, nor is it so claimed by plaintiff as I understand it." The court further instructed the jurors that it was no part of their task to determine whose duty it was to look after the condition of the street—that it did not concern them. By that charge there was withdrawn from consideration of the jury any possibility of holding the defendants negligent because of the condition of the street. There can be no complaint on that ground. Although in denying defendants' motion for a directed verdict at the close of their case the court did state that plaintiff's evidence was "not definite and certain enough to show that there were any ruts," it was not thereby estopped from permitting the jury to consider the matter. There was evidence, by pictures as well as testimony, tending to show the existence of ruts, which, though not a condition upon which liability might attach to defendants, were a factor to be considered in determining the care required to be exercised by the respective parties. The charge of the court went no further.

There would have been no purpose in allowing the defendants to compare the condition of the flangeways and paving construction at the place of the accident with that existing at other places, as they desired to do, for by the charge that matter was entirely eliminated as an element of negligence. Plaintiff made no claim that defendants were liable *per se* because of the condition of the avenue, but rather that defendants did not exercise due care toward Kamrow at a time when they should have discovered him in a position of danger. Thus it was also proper for plaintiff's counsel to argue to the jury that the ruts made it impossible for decedent to avoid the collision.

The court, after reading to the jury the provision requiring vehicles to be driven upon the right half of the traveled portion of a

highway, stated that failure to do so would be "evidence of negligence *per se.*" This is assigned as error. The charge was weak in that violation of such a provision, unless excused or justified, is negligence *per se,* not merely evidence thereof. Mechler v. McMahon, 184 Minn. 476, 239 N. W. 605. However, the court went on to point out that Kamrow's being on the left-hand side might be justifiable or excusable; that plaintiff claimed that to be the situation and that if such were true then Kamrow could not be charged with negligence. It is difficult to visualize in just what manner the jury could have been misled. The court in the opening part of its charge stated the claims of the respective parties and pointed out that it was up to the person claiming a certain fact to be true to prove that by a fair preponderance of the evidence. The charge must be considered as a whole; so considered, the error assigned here is not ground for reversal.

Similarly it is claimed that the court erred in its charge as to Kamrow's duty to give a signal before making a left turn. After reciting verbatim the applicable provision of the law, the court instructed that if any failure to comply with the law contributed to the happening of the accident there could be no recovery by plaintiff. The charge in this respect was adequate. Plaintiff made no claim that Kamrow made a justifiable left turn but rather that he made no turn to the left at all. Therefore it was unnecessary for the court to instruct as to whether such a turn, if made, was justifiable.

Defendants' request that the jury be charged that if there was no reason that would be apparent to an ordinarily prudent person why Kamrow would not turn back to his own right side of the avenue then Ringness "could assume that Kamrow would use ordinary and reasonable care to turn away from the track" was refused. This matter was well covered, as the court instructed the jury that the drivers of both vehicles were required to keep a reasonable lookout to avoid a collision.

There are several assignments of error relating to misconduct of counsel in the closing argument to the jury. All have been thoroughly examined. A careful perusal of the entire argument, which

was made a part of the printed record, indicates that no part of it could have prejudiced the minds of the jurors. Most of the remarks objected to, if improper in any manner, would have prejudiced the jurors as to the amount of damages to be awarded. The verdict was only $1,000. The plaintiff was decedent's mother, age 83. He was her sole support. Certainly it cannot be held that the jury was prejudiced in that respect.

Affirmed.

HOLT, JUSTICE (dissenting).

I dissent. The witness Paetzel was not in a position to observe where decedent was driving, and even if his testimony was accepted by the jury it shows that deceased was guilty of contributory negligence in not stopping his car when unable to get off the track, but keeping right on against an advancing car.

JULIUS J. OLSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Holt.

MR. JUSTICE STONE took no part in the consideration or decision of this case.

