FLORENCE E. HINMAN v. SHELDON T. GOULD AND ANOTHER.[1]

May 26, 1939.

No. 32,011.

[1]Reported in 286 N. W. 364.

378

*Hoke, Cobb & Janes,* for appellant.
*Thomas R. Walenta,* for respondents.

PETERSON, JUSTICE.

Plaintiff, while riding as a guest passenger in the automobile of the defendant Gould, on May 1, 1937, sustained personal injuries as a result of a collision between Gould's car and a car driven by one McNeal. She recovered a verdict against both defendants, but only Gould appeals.

The collision occurred in broad daylight in the early evening on the Washington avenue bridge across the Mississippi River in Minneapolis. It had rained, and the surface of the bridge was wet and slippery. The bridge is over 1,100 feet long, extends east and west, and has a roadway 38 feet wide, with two sets of streetcar tracks down the middle. There is a guardrail along the outer edge of each side of the roadway to protect cars against going over the bridge. Between the guardrail and the streetcar rails is a lane on each side of the bridge wide enough for vehicular traffic.

Gould started across the bridge from the east at a speed of 25 to 30 miles per hour at the same time that McNeal started to cross from the west at a speed of about 30 to 35 miles per hour. McNeal started to pass an automobile driven by one Melloy after he had driven about 20 or 30 feet out on the bridge and then drove alongside of him for about 200 feet. Here McNeal's car commenced to skid and he lost control of the car, which weaved from one side of the road to the other along the streetcar tracks on his right side of the bridge. Then his car skidded into the guardrail on his

side of the bridge and careened clear across the bridge and hit the guardrail on Gould's right, after which the car turned to McNeal's right and proceeded southeasterly across Gould's path toward the south side of the bridge.

Meanwhile Gould was proceeding westerly straddling the west-bound streetcar tracks. There was some testimony that he was almost on the middle of the road. There was a space between his car and the guardrail on his right several feet wide. He was about 300 feet out on the bridge when McNeal started to have trouble with his car. Gould proceeded about another 300 feet before the impact without slackening his speed or pulling over to his right to get out of McNeal's way. Plaintiff claims that she told Gould to look out when the cars were about 100 feet apart. Gould says that he first saw McNeal when the cars were about 80 or 85 feet apart, and, although he realized there would be a collision when the cars were about 65 feet apart, that he did not slacken his speed or pull over to the right. When Gould says he first saw McNeal 80 or 85 feet away, the latter was heading across Gould's path into the guard-rail on his right. From that time until the collision McNeal was in front of Gould on the latter's side of the road. The left front of Gould's car hit the left rear side of McNeal's car as it was heading back to the latter's right side of the road. A foot or so would have enabled McNeal to clear without a collision.

A Mr. Bosley, who was a witness for Gould, was driving a few car lengths behind him, saw McNeal's car skidding and careening and, realizing that the situation was dangerous, pulled over to his right and stopped.

It appeared from the examination of one of Gould's witnesses that an insurance company was conducting his defense. His counsel in closing argument invited a discussion of insurance and then proceeded to discuss the liability of insurance companies and of drivers to their guests, under the law of this state and North Dakota. Then he started to discuss the company's liability under the policy issued to Gould although the policy was not in evidence. The court, upon objection, ordered him to refrain from further argument

along these lines, but he persisted, explaining to the jury that under the court's rulings he was not permitted to make certain explanations, which he then proceeded to make. Upon objection he was again ordered to refrain from such argument.

Plaintiff's counsel, in turn, referred to the insurance and argued that it might be inferred that Gould's indifference to the rights and safety of others might be attributed in part to the fact that he had no worries about liability since he had insurance coverage. This line of argument was stopped upon objection by Gould's counsel. The court then informed counsel that it intended to deal with the matter in the charge, which it did in the following language:

"The first thing I expected to mention was whether or not there is any insurance in this case hasn't a thing to do with the facts in the case, and you should determine this case on the facts as you have heard them there, whether you think there is any insurance in this case or not, and if you do not do that you are violating your oath that you have taken, and you are to determine this case on the facts alone."

The issue submitted was whether the defendant exercised due care under the circumstances. It was not claimed that plaintiff was guilty of contributory negligence. There was no exception to the charge.

Appellant contends that (1) the evidence does not sustain a finding that he was negligent, and (2) there should be a new trial for prejudicial misconduct in referring to insurance coverage.

■ There is no dispute that Gould's liability is to be tested by the rule that the driver of a motor vehicle is under the duty to exercise due care in the operation thereof for the safety of others. The only question here is whether the evidence sustains a finding of failure to exercise due care. There is practically no dispute that from the time McNeal's car commenced to skid the situation was a dangerous one. The street was wet and slippery, and the McNeal car was skidding and careening. Although the McNeal car was plainly visible, Gould did absolutely nothing to avoid it. If he did not see it until he was 80 or 85 feet from it, as he says, his failure

to maintain a proper lookout was a fact question. Coupled with this, the evidence shows that, although the accident might have been avoided if the McNeal car had had another foot or so in which to clear, Gould did not slacken his speed, stop, or change his direction to avoid the collision. He proceeded headlong to encounter danger coming at him. In head-on as in other collision cases, the question of alleged negligence of the operator of an automobile is one of fact for the jury, where, as here, the evidence shows that he might have avoided the collision by the exercise of due care. Elkins v. Minneapolis St. Ry. Co. 199 Minn. 63, 270 N. W. 914; Barndt v. Searle, 202 Minn. 82, 277 N. W. 363; Turnmire v. Jefferson Transp. Co. 202 Minn. 307, 278 N. W. 159.

Foster v. Gamble-Robinson Co. 188 Minn. 552, 247 N. W. 801, is not in point for the reason, among several stated in Spates v. Gillespie, 191 Minn. 1, 252 N. W. 835, that there was no danger apparent in that case until plaintiff's car darted out in front of defendant's truck. There, too, it appeared that defendant was exercising due care in operating its truck at only 15 miles per hour. Here it appears that Gould had notice of the danger and encountered it without attempting to avoid it. In Ind v. Bailey, 198 Minn. 217, 269 N. W. 638, the defendant slowed down and proceeded only after it appeared that plaintiff had regained control of his car, which later shot across the pavement suddenly. Here Gould proceeded toward McNeal knowing that his car was out of control. Both cases are clearly distinguishable.

The evidence sustains a finding that Gould was negligent.

There was altogether too much discussion of insurance. Appellant is in no position to complain. His counsel not only invited such argument, but persisted when plaintiff objected and the court ordered him to stop. It was counsel's duty to stop when the court ordered him to do so. Counsel's zeal for his client is required to yield to his duty of obedience to orders of the court during a trial. His adversary is entitled to the full benefit of the court's rulings, and counsel has no right to flout either the court or its rulings. Such conduct is simply indefensible. Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442, 461, 277 N. W. 394. The only

excuse for plaintiff's counsel discussing insurance was the invitation and provocation by Gould's counsel. He now admits that it would have been better to refrain from such argument.

This case calls for the application of the rule that where counsel in his closing argument pursues an improper line of argument which invites or provokes a reply, it is not reversible error if his adversary engages in similar argument in reply even though such argument might otherwise be objectionable. Gibson v. Iowa Cent. Ry. Co. 115 Minn. 147, 131 N. W. 1057; McKeown v. Argetsinger, 202 Minn. 595, 279 N. W. 402, 116 A. L. R. 398. Note, 78 A. L. R. 1500. Abbott's Civil Jury Trials (5 ed. by Viesselman) § 352(i), p. 772, notes 1 and 2.

Several interesting cases are cited in the notes to the text cited, among which is Hurley v. C. M. & St. P. Ry. Co. 48 N. D. 1251, 189 N. W. 322, in which defendant's counsel argued that a liberal verdict would result in higher freight rates. Counsel for plaintiff in his argument to the jury then stated that the law allowed charging such high rates so that money would be available to pay personal injury claims. On appeal the court held the latter remark to be improper, but not prejudicial, because it was provoked by the improper remarks of defendant's counsel.

■ Furthermore, plaintiff's counsel refrained from further argument relative to insurance when the court ordered him to do so. The charge of the court that insurance had nothing to do with the case, that the case was to be decided upon the facts, without regard to insurance, and that the jurors would violate their oaths if they did not so decide it, dealt with the matter so fully and emphatically that no prejudice to either party could have resulted under the circumstances. Martin v. Schiska, 183 Minn. 256, 236 N. W. 312; Nye v. Bach, 196 Minn. 330, 265 N. W. 300.

Affirmed.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.