LeROY JAMES v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.[1]

October 20, 1944.

No. 33,776.

[1]Reported in 16 N. W. (2d) 188.

*Warren Newcome, Alfred E. Rietz,* and *Nelson J. Wilcox,* for appellant.

*Robert J. McDonald* and *William H. DeParcq,* for respondent.

STREISSGUTH, JUSTICE.

Plaintiff was a switchman in the service of defendant at Sioux City, Iowa. While engaged in interstate switching operations, he was directed by the general yardmaster to get onto the footboard of a tender attached to a locomotive which at the time was running backward on the main line on its way to a passing track. The switch controlling the passing track was connected with a "derail," 195 feet away, in such a manner that the closing of the switch to clear the main line threw the derail onto the passing track. The yardmaster had offered to line up the switches after the locomotive and tender were off the main track, but threw the switch before the locomotive had cleared the derail. The speed of the locomotive at the time was about ten miles per hour. The yardmaster's act in prematurely throwing the switch and thereby throwing the derail onto the passing track was, admittedly negligent. Both plaintiff and his foreman, who was also riding on the footboard of the tender, saw the derail flip onto the track ahead of them, and the foreman hollered, "Derail—jump!" Plaintiff jumped, landing at the bottom of a ditch about four feet deep, and in so doing sustained the injuries for which he sued. The tender was actually derailed but not overturned. The locomotive did not leave the track.

■ On these facts the trial court properly granted a motion by plaintiff for a directed verdict in his favor, reserving for the jury only the question of damages, and properly refused an instruction on contributory and comparative negligence. Under no reasonable construction would the evidence have supported a finding that plaintiff was guilty of contributory negligence in jumping from the tender as he did upon orders of his foreman. Plaintiff had the choice of jumping into a comparatively shallow ditch or remaining on the tender and taking chances on its being derailed and possibly

overturned. He had to act quickly. Such being the situation and considering especially the order to jump, plaintiff cannot be held contributorily negligent, though jumping may not have been necessary or the wisest thing to do. Contributory negligence cannot be predicated upon compliance with a superior's orders unless the danger is imminent and so obvious and apparent to the ordinary mind that it would be unreasonable to comply. Benenson v. Swift & Co. 127 Minn. 432, 149 N. W. 668; Dimetre v. Red Wing Sewer Pipe Co. 127 Minn. 132, 148 N. W. 1078. And see, Johnson v. Townsend, 195 Minn. 107, 261 N. W. 859; Blom v. Wilson, 209 Minn. 419, 296 N. W. 502.

■ The principal attack upon the verdict and the court's order sustaining it is that the verdict is excessive. This requires only a brief reference to some of the evidence.

On April 3, 1942, the day of the accident, plaintiff was 54 years of age. He had been continuously employed by the defendant as a switchman from 1922 down to the time of the accident. In 1932 he had been promoted to the rank of a switch foreman. His rate of pay as a switchman was $7.72 for eight hours and as a foreman $8.34 for a like period. His monthly pay averaged from $180 to $190.

A great deal of medical testimony was offered, much of it in respect to the role which syphilis had played in plaintiff's condition of health and should play in the prognosis of his case. There was credible testimony that syphilis, with which he was afflicted, was not a factor contributing to his condition at the time of trial and would not affect his future health or reduce his expectancy. It is unnecessary that we analyze the testimony *in extenso*. It is sufficient to say that giving it the favorable construction to which it is entitled upon this appeal the evidence showed that as a result of the accident plaintiff sustained a permanent injury to his lower back, causing discomfort and pain and resulting in weakness and limitation of motion; that there was a marked subluxation or backward displacement of the fifth lumbar vertebra and a definite aggravation of a preëxisting arthritis. These injuries, according to plaintiff's experts, were permanent in character and would disable plain-

tiff from performing the duties of a switchman or any other work which would put a strain on his back.

Even though questions as to the cause, the character, and the extent of plaintiff's injuries and as to the factors to be considered in arriving at a reasonably correct prognosis were highly scientific ones, yet, as pointed out by this court only recently: "Under our system of jurisprudence the jury is the tribunal to which questions of this kind are submitted for determination." Kundiger v. Metropolitan L. Ins. Co. 218 Minn. 273, 282, 15 N. W. (2d) 487, 493. Considering that plaintiff's life expectancy was 16.72 years and that he was earning over $2,000 per year; that even defendant's experts admitted that, notwithstanding his syphilitic and arthritic condition, it was not unlikely that, except for his accidental injuries, he might have continued working as a switchman for ten years without any trouble; that his actual loss of salary from the date of the accident to the date of trial was $3,330; and that he was entitled to a substantial allowance for pain and suffering, we cannot say that the verdict of $14,000 was excessive or not justified by the evidence. The verdict has the approval of the trial court and should not be disturbed unless it resulted in some degree from misconduct of plaintiff's counsel or error in the court's instructions.

What we said in Leonczak v. M. St. P. & S. S. M. Ry. Co. 161 Minn. 304, 308, 201 N. W. 551, 552, in sustaining a verdict for $15,000 for injuries to a passenger who jumped from a moving train, is particularly apt:

"* * * Some of the plaintiff's injuries are uncertain. The case is not one, however, of merely subjective symptoms. There is objective evidence of actual physical injury. * * *

"* * * The testimony of the physicians of the two parties is quite at variance. If that favorable to the plaintiff's claim is true he cannot now do substantial work and will not be able to do such work in the future. He and his witnesses may have exaggerated his injuries, and the verdict may be liberal. We cannot say that the plaintiff's condition is not the result of injuries sustained when he

jumped from the train or that the verdict is excessive. It was all for the jury."

■ Notwithstanding the liability of defendant is admitted and notwithstanding there is support in the evidence for a verdict in the amount returned, we cannot permit the verdict to stand if the argument of counsel for plaintiff was improper and tended to arouse passion and prejudice in the minds of the jurors. This is not a case where we can say, as we did in Elkins v. Minneapolis St. Ry. Co. 199 Minn. 63, 270 N. W. 914, that the smallness of the verdict indicates that no prejudice resulted. A verdict for considerably less than $14,000 was clearly indicated should the jury have accepted defendant's medical testimony.

■ In view of the emphasis defendant has placed upon this feature of the case, we have examined the record with special care, but cannot agree that there was prejudicial misconduct in the argument for plaintiff. The trial judge, who was in a much better position than we are to determine this question, was of the same opinion. In a memorandum attached to his order denying a new trial, he said:

"So far as the argument of counsel for the plaintiff is concerned, in view of the issues that were made in the case, and in view of the argument of defendant's counsel, I find little to criticize about it. In fact, both attorneys tried this case in a lawyer-like and proper way."

Some of the statements made by plaintiff's counsel were incited by the assumption on the part of opposing counsel of an attitude of ultra fairness in opening his remarks to the jury with the cant: "I am going to say something to you that you probably have never heard before from a lawyer for the defendant if you have had jury experience, and that is that I am going to say to you frankly that under the law in this case there must be a verdict for the plaintiff." This statement was made at the close of a trial in which the defendant had consistently denied liability and had made a motion for a directed verdict on the grounds that plaintiff had failed to

prove negligence and that any negligence proved was not the proximate cause of plaintiff's injuries.

Plaintiff's counsel, taking his turn and deeming his opponent's opening remarks somewhat sanctimonious, said:

"* * * Now let's see when he became so frank. Let's see when it was, if it wasn't after adjournment last night, as after Judge Carroll had decided that every single claim they made in this case was so false and without foundation in law or evidence that he would not submit it to the jury."

Upon objection to these remarks, plaintiff's counsel explained that he referred to defenses on the merits which had been pleaded and urged during the trial, but which the trial court at the close of the evidence, upon motion of plaintiff, had withdrawn from the jury. Its counsel having invited the argument of plaintiff's counsel, defendant is in no position to complain of the retaliatory remarks by plaintiff's counsel, though the latter's language was more emphatic than necessary. Hinman v. Gould, 205 Minn. 377, 382, 286 N. W. 364, 366, and authorities cited; Olson v. Purity Baking Co. 185 Minn. 571, 242 N. W. 283; United States v. De Vasto (2 Cir.) 52 F. (2d) 26, 78 A. L. R. 336.

■ Only one other incident needs special comment. At one stage of his argument, in commenting upon the fact that defendant had employed two detectives to shadow the plaintiff for a period of several months and to take motion pictures of him at different times, plaintiff's counsel said,

"At that time they knew it was all their fault, and they didn't even hold an investigation of this derailment, and because it was the general yardmaster nobody was criticized and nobody got suspended. Instead of going out to that employe that had worked for them for 20 years and who was then disabled according to their own doctor, and trying to make a settlement with him—."

At this point counsel for defendant interrupted and objected, stating, "In fact, we tried to make a settlement." This ended the discussion between counsel.

Any reference to an attempt or lack of attempt to make a settlement was, of course, improper, but, in our opinion, not of a character likely to prejudice the minds of the jury, especially in view of the statement of defendant's counsel that an offer of settlement had in fact been made. As said in State v. Hass, 147 Minn. 269, 271, 180 N. W. 94, 95:

"* * * The jury is a part of the court in the administration of justice. It is not swayed by every imprudent or wrongful remark of counsel. We must credit it with exercising good judgment."

■ There were some inaccuracies in the trial court's instructions, of which defendant also complains. These were not specifically called to the court's attention after the charge was given and, in our opinion, could not have affected the result. They will therefore be disregarded. Merritt v. Stuve, 215 Minn. 44, 9 N. W. (2d) 329.

In this category is an instruction by which the court told the jury:

"* * * in estimating future damages * * * you have to give its present value of the future earnings. * * * In other words, money earned in the future would not be worth as much as it is at the present time, but that is a matter of interest."

Counsel apparently was satisfied with the instruction as given; he asked no further elaboration and took no exception. Speaking in the terms of a banker or an actuary, the court, to be accurate, should have explained that the matter of determining present cash value of future earnings was one of discount rather than of interest, and it properly could have elaborated by explaining how discount tables operate; but, in the absence of an exception or a request for a more specific instruction, defendant is in no position to complain.

■ In respect to the expectancy of a man of plaintiff's age as shown by the mortality tables, the court charged: "That does not necessarily represent the plaintiff. It represents the average man, and it is given here as just another item of help to the jurors * * *." Defendant complains that the court did not also give an instruc-

tion requested by it dealing with the same subject, in these words:

"* * * This table is not conclusive, and does not prove that Mr. James would have lived or would have been able to work for years. You will bear in mind that he, irrespective of this accident, is liable to die at any time; or he is liable to be incapacitated at any time, so that he could not continue his work as a switchman. You are in nowise bound by this table. In considering these tables, you should take into consideration that they are based on the expectancy of the lives of persons in ordinary good health. You should keep in mind and take into consideration the state of Mr. James' health at the time this accident occurred. He has admitted that in 1934 he was afflicted with syphilis. There is also evidence that the day after the accident this disease was active. There is also evidence to the effect that a person afflicted with this disease may be seriously affected by it at any time. You will take this evidence into consideration in determining his loss of future earnings."

The requested instruction was properly refused as argumentative and as embodying comments upon the evidence, which under our practice are disapproved. The consequences which the instructions sought to attribute to syphilis arise, according to the medical testimony, only in the absence of proper treatment, which the testimony showed plaintiff had received. Plaintiff's experts were definitely of the opinion the syphilis was not a factor in his condition. To instruct as defendant requested would be merely singling out and emphasizing its theory of defense.

Other assignments of error based on the instructions have been considered but found to be without merit.

Affirmed.