EVELYN R. BUSH AND ANOTHER v. ANDREW HAVIR.

91 N. W. (2d) 784.

August 1, 1958—No. 37,411.

*Raymond L. Flader, Thomas J. Battis,* and *Murnane & Murnane,* for appellant.

*Clifford W. Gardner,* for respondents.

NELSON, JUSTICE.

This case involves the claims of two parties for damages arising out of an automobile accident which occurred at approximately 6:30 p. m. on August 15, 1954. One of the claims is brought by Evelyn R. Bush against Andrew Havir for personal injuries. The other is brought by George R. Bush, the husband of Evelyn R. Bush, against Andrew Havir for personal injuries, for medical care and treatment for his wife, for loss of services of his wife and consortium, and for damages to his automobile.

At the time of the accident George R. Bush was driving his Packard passenger automobile, which had been converted into a truck, northerly on Highway No. 65 at a point approximately 3 to 4 miles north of Mora, Minnesota. His wife Evelyn was riding with him in the front seat. Andrew Havir, accompanied by his wife, was driving his Cadillac automobile south on the same highway. The highway at the point of the accident runs in a north and south direction. It is a blacktop road, 20 feet in width from shoulder to shoulder. The area in the vicinity of the accident is free from obstacles that would impair the vision of either of the drivers on the highway. Heavy rains had fallen in the area during the day. The weather had cleared at the time of the accident, although sections of the pavement were still wet. The defendant concedes

that the plaintiff was in his proper lane and that he was in the wrong lane when the accident occurred.

At the completion of the trial, the jury returned a verdict for Evelyn R. Bush in the amount of $16,000 and a verdict for George R. Bush in the amount of $6,835. Defendant moved for judgment in favor of the defendant in each action notwithstanding the verdict or in the alternative for a new trial. The trial court denied the motion and the defendant appeals.

We are bound on this appeal, under the familiar rules governing the scope of review where the jury's verdict involves conflicts in evidence, to consider the evidence in the light most favorable to the verdict and to sustain the verdict if it is possible to do so on any reasonable theory of the evidence. Unless the jury's verdict is manifestly and palpably contrary to the evidence, it should not be set aside.

The Havirs had been at their summer home on Mille Lacs Lake and were returning to their home in St. Paul. Defendant, 69 years of age at the time and the owner of the Cadillac, was himself the driver and fully familiar with the highway. The record indicates that just before the accident defendant could see ahead on the highway at least a mile. It appears from the testimony that he knew the weather conditions; that there was nothing mechanically wrong with the Cadillac; and that he conceded that he might have been passing cars prior to the accident at 70 m. p. h.

The plaintiff George R. Bush, as he approached the point of the accident, was on the east side of the highway in the northbound lane going north. He testified that there was southbound traffic which he saw as he approached it; that he was then traveling about 4 feet to the east of the centerline at a speed of about 50 m. p. h.; that nothing had happened within a mile to divert his attention from his driving; that he was looking straight ahead at all times as he traveled the last mile up to the point of collision; that as he traveled the last mile he had not been aware of any vehicle traveling in the opposite direction that appeared to come over to his side of the road. Bush said that the first time he saw defendant's Cadillac it was crosswise in the northbound lane directly ahead of him; that he applied his brakes but he does not

know whether he was able to reduce his speed before the impact. He states, however, that he did not turn out of his lane either to the right or the left before the impact occurred. Plaintiff's wife only remembered the car being in front of her and the accident happening.

Morton Goustin, an attorney, and John Nevin, a hotel operator, both of Minneapolis, were returning south over the same highway, Nevin driving Goustin's 1950 Chevrolet automobile. They had come over Highway No. 65 from Lake Vermilion and were moving at a speed of from 60 to 65 m. p. h. shortly before the accident occurred. Their testimony indicates that traffic was heavy, especially ahead of them. Called as witnesses for the plaintiff, they testified that they were passed by a new Cadillac, driven by the defendant, who was driving "exceedingly fast," passing them "with no effort whatever." Other testimony on the part of Goustin and Nevin is to the effect that defendant's speed immediately prior to the accident as he passed them was between 80 and 85 m. p. h. and that it was increasing. They characterized defendant's position in the driver's seat as hunched over the wheel appearing to be pushing the car; that defendant on several occasions after passing them attempted to pass the car ahead of him by going into the northbound lane, and then pulling back into the southbound lane; that either on the second or third attempt defendant pulled into the wrong lane to pass the car immediately ahead. It appeared immediately that he stepped on the brakes, that his car seemed to buckle, kind of pull up in the air with the brakes on, as indicated by the lights, and coming to somewhat of a stop. As they saw it, he appeared on the east side of the highway without warning and was struck by the plaintiff, who at the time was in his proper lane proceeding north. This resulted in a terrific impact with the defendant swerving down, turning over, and landing in the ditch on the east side of the highway. Goustin and Nevin testified that had the defendant jumped to the west rather than the east, these witnesses would have collided with the defendant. There is testimony that at the time of the collision visibility in the area was excellent. The witnesses Goustin and Nevin brought their car to a prompt stop; Goustin got out of their car and remained at the scene of the accident while Nevin went on to Mora to summon help.

The positions of the respective cars after the accident were described as follows: The front of the Cadillac was facing southwest with the rear end consequently in a northeasterly direction in the ditch on the east side of the highway. It was immediately north of the Packard. The Cadillac was severely damaged on the right side in the center of the two doors which were completely pushed in; glass was broken but not completely shattered; the plaintiffs' Packard of old prewar design (1940) was a heavy car with a strong frame and it ended up facing north. It had been knocked off the highway out of its lane. The front end of it was smashed; its windshield was broken, though not completely shattered.

The defendant testified that as he approached the point of the collision, he passed a car around 400 to 500 feet north of where the accident happened. Concededly this was the car in which Goustin and Nevin were riding. He states that he passed that car at a speed of about 65 m. p. h. After passing, defendant says he returned to the right side of the road and applied the brakes lightly, reducing his speed to about 50 m. p. h. and following a string of cars ahead of him, which were all proceeding south. Havir says that at this time a car, also traveling south, passed him, and cut in ahead of him and that as the car pulled in ahead of him, the traffic ahead slowed down and he had to apply terrific pressure on his brakes to avoid a collision and that as a result the back end of his car swung around and he lost control of his car. He says that his car then turned sideways and went over on the left-hand side of the road at which time the plaintiffs' car, approaching, was about 100 feet away and that thus the collision resulted. It does not appear from the record that Goustin and Nevin, passed shortly before the collision, saw any other car go by them or any other car pull in ahead of Havir. It appears from the record that Havir had given a statement to an insurance adjuster following the accident giving his version of what took place on the day of the accident. The record indicates that counsel for the defendant asked the defendant the following questions:

"Q. Mr. Havir, counsel asked you about the report you had made and it is indicated you made it a couple of months after the accident; I will show you an instrument consisting of four pages numbered in the

right hand corner 1, 2, 3, 4, and on the left hand corner certain initials and on the last page a name, and I ask you if you recognize that piece of paper? Don't tell what it is, but do you recognize that piece of paper?

"A. Yes.

"Q. And what is that? Don't tell us what it contains, but just what it is?

"A. It is a copy that was made *by one of the men from the insurance company.*

\* . \* \* \* \*

"Q. Just a minute, does that report bear a date?

"A. Yes.

"Q. And does that report contain your complete version of what took place on the day of the accident?" (Italics supplied.)

Counsel for plaintiff objected at this point and the matter was taken up in chambers. The court decided that it was going to permit part of the statement to be introduced over objection because of plaintiffs' contention that no such claim had been previously asserted by defendant. Defendant was recalled for further cross-examination and asked the following questions:

"Q. \* \* \* were you in the act of passing that line of traffic when it was your contention at some other time and some other place that a car while you were in the act of passing went by you and cut in front of you, did you ever say that?

"A. I did not.

"Q. And if you ever said that it is not your present recollection, is that right?

"A. It is right.

"Q. You never said that?

"A. I never said that.

"Q. You never told anybody that?

"A. No.

"Q. If that appeared in any statement that you signed it wouldn't be true, is that it?

"A. I don't know any statement that I signed with such recollections.

324

"Mr. Gardner [plaintiffs' counsel]: That is all.

"Mr. Murnane [defendant's counsel]: *No questions, you may come down.*" (Italics supplied.)

Thus there was left for the jury's determination the questions whether the defendant passed any cars after passing that of the witnesses Goustin and Nevin and whether any other cars passed the Goustin and Nevin car after defendant had passed it immediately before the collision occurred. The testimony indicates that Nevin could recall no car passing the defendant before the accident nor that any cars passed him except defendant's car. Goustin said that there absolutely was no car that passed them between the passing of the defendant and the collision, nor could he recall any car passing theirs for 10 miles before the defendant did so.

The defendant makes numerous assignments of error, which present several questions for determination. The one which the defendant presses first is the following: Was counsel for the plaintiffs guilty of misconduct which was prejudicial to the rights of the defendant? The other questions involved are: Were the verdicts excessive, appearing to have been given under the influence of passion and prejudice? Were the verdicts contrary to the evidence and the law? Did the court err on rulings of evidence? Did the court err in refusing to grant defendant's request to instruct the jury as to the issue of contributory negligence of plaintiff George R. Bush? Did the trial court err in refusing to submit the issue of contributory negligence to the jury? Did the trial court err in refusing to charge or instruct the jury to disregard comments of plaintiffs' counsel to which objections were made and sustained by the court? Finally, did the trial court err in denying defendant's motion at the close of plaintiffs' summation to instruct the jury to disregard comments of plaintiffs' counsel to which objections were made and sustained?

We will first consider defendant's contention that the trial court should have granted defendant's requested instructions relative to the alleged contributory negligence of plaintiff George R. Bush. The trial court withheld that issue from the jury on the grounds that there was nothing in the testimony to justify submission of George R. Bush's

conduct as driver. Mr. Bush testified that he did not see defendant's car and did not know where it came from; that the only time he saw it was when they were at a point approximately 75 to 100 feet from the point of impact; and that all he could do then was to apply his brakes. Mrs. Bush said that she only remembered a car being in front of her and the accident happening but gave no testimony relative to how the accident happened. The uncontradicted testimony of Mr. Bush was that at the moment immediately prior to the accident he was traveling on the proper side of the road, at a reasonable speed not exceeding 50 m. p. h. Defendant fails to present any affirmative evidence indicating negligence on the part of the plaintiffs.

On the record as it stands, we cannot say that the court committed error in refusing to submit the issue of contributory negligence. When the issue was considered prior to the commencement of the closing argument, the trial court stated to both counsel, "I don't see anything in the testimony here that would justify submission of conduct on his part [referring to George R. Bush]."

We held in Rivera v. Mandsager, 228 Minn. 227, 36 N. W. (2d) 700, that upon the facts in that case it was proper for the trial court to find as a matter of law that the plaintiff was not guilty of contributory negligence. We held in Howard v. Marchildon, 228 Minn. 539, 37 N. W. (2d) 833, that a violation of the Highway Traffic Regulation Act constituting prima facie evidence of contributory negligence is no defense unless it is found to constitute contributory negligence as a matter of fact and also unless such contributory negligence was a proximate cause of the harm for which recovery is sought. It is a fundamental proposition that contributory negligence involves two essential elements; namely, negligence and proximate cause. See, Kachman v. Blosberg, 251 Minn. 224, 87 N. W. (2d) 687; Zuber v. N. P. Ry. Co. 246 Minn. 157, 74 N. W. (2d) 641; Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504; Simon v. Carroll, 241 Minn. 211, 62 N. W. (2d) 822; Donovan v. Ogston, 239 Minn. 553, 59 N. W. (2d) 672; Guile v. Greenberg, 192 Minn. 548, 257 N. W. 649; 13 Dunnell, Dig. (3 ed.) § 7015, and cases cited.

We come to the question whether the verdicts were so excessive

as to appear to have been given under the influence of passion and prejudice. Upon consideration of the verdict in favor of Mr. Bush, there is evidence on which the jury could find that he received temporary cuts, scratches, bruises, lacerations about his body, a cut over his left eye, and other injuries to his person from the accident. He has continued to have some difficulty with his back since the date of the accident. He missed one month of work as a result of the accident and incurred medical expenses for himself and his wife. His vehicle was apparently a total loss. The testimony was that he lost a month's wages; that the damages to his car were from $250 upward; that adding to the aforesaid items, hospital expenses, doctor's fees, nursing, and other expenses testified to, it appears that the claim for special damages approximates the sum of $2,885.55. He would be entitled to a reasonable award for pain and suffering. If all these factors are considered, it does not appear that the jury verdict of $6,835 returned in his favor was necessarily based upon passion and prejudice. The jury was justified in taking into account that plaintiff, due to his wife's injuries, suffered loss of services and consortium and that the life expectancy of Mr. Bush, who was 33 years of age, was 32 years.

As to Mrs. Bush there was evidence upon which the jury could find that she had numerous temporary cuts and abrasions about her body, as well as a serious cut and injuries to her right leg, with resulting injuries to her back. Dr. McCain, testifying in her behalf, gave it as his opinion that the leg was so severely injured that she would suffer a permanent disability to the limb of 15 percent; that the severe injury to her right leg continued to be the cause of the pain and disability she has suffered to her back since the accident occurred. The record indicates that she was completely incapacitated for a period of 8 weeks and that she continues to have difficulty with her right leg and back. There was also medical testimony at the trial indicating that additional medical care, including operations, may well be required in the future treatment of her leg and that the estimated future cost in that regard may reach the sum of $1,000. We think the record indicates that her pain and suffering caused by the accident were considerable and of a serious and substantial nature. The record indicates that Mrs. Bush has a life

expectancy of 34.63 years. Her age at the time of trial was 31 years. In view of the testimony as to the injuries she suffered as a result of the accident, their probable duration, and effect upon her future, a recovery of $16,000 as damages for the injuries she suffered would not be unreasonable or excessive to the extent of justifying a reversal, nor in such an amount as to indicate that the jury acted under the influence of passion and prejudice. In reviewing the testimony, it appears to us that the nature and extent of her injuries, the question of their permanency, the pain and suffering she had undergone up to the date of trial, and the probable future pain and suffering including scars and the other details of her claims were thoroughly exhausted during the trial. It is to be noted from the record that her attending physician, Dr. E. R. Youngren, was not cross-examined.

It is generally recognized that there is no fixed standard by which damages for injuries can be determined. The rule as to the measure of damages in negligence cases is that one who commits a tort is liable for all the proximate consequences thereof. Liability extends to all consequences which flow in unbroken sequence from the wrongful act until they become too remote, regardless of whether they may be deemed probable or not, or whether they might have been foreseen or not. The test of the extent of liability is in causation and not in probability or foreseeability. The measure of recovery in each damage case depends upon the particular facts in the case at issue. 5 Dunnell, Dig. (3 ed.) § 2570, and cases cited.

Defendant contends that the trial court committed error in denying defendant's motion at the close of plaintiffs' summation to the jury to instruct the jury to disregard comments of plaintiffs' counsel to which objections were made and sustained. The record indicates that defendant's counsel took exception to certain remarks made by plaintiffs' counsel in the course of the closing argument to the jury. In the first instance the trial court sustained the objection without comment. In the other instance the trial court made the statement: "I think those words are objectionable; objection sustained." There were other instances where defense counsel indicated that certain remarks were objectionable, but there was no insistence on a ruling. The court

ordered counsel to proceed with the discussion of the evidence.

The trial court, however, did not single out the remarks of plaintiffs' counsel to which objections were made and sustained and specifically admonish the jury to disregard the same. The court did make the following statement to the jury in the course of its instructions:

"You must rely upon your own recollection of what the evidence is and you must disregard all misstatements of the evidence which may have been made by the Court or by counsel because you are the exclusive judges of the facts and the credibility of worthiness of belief of the witnesses. * * * The law requires that you determine the facts in this controversy in a calm and businesslike manner so you must exercise sound judgment with no passion, prejudice or sympathy."

Counsel for the plaintiffs contends that where the trial court instructs the jury, as it did here, to base the verdict on the facts and the law and disregard all misstatements of the evidence which may have been made by counsel, the situation is resolved regarding . any complaint of misconduct.

We have no hesitancy, after a reading of the record, in coming to the conclusion that counsel for plaintiffs pursued in several instances an improper and prejudicial line of argument before the jury, but a full consideration of the record would hardly justify this court in saying that it was wholly uninvited. See, Koenigs v. Thome, 226 Minn. 14, 31 N. W. (2d) 534. This court in Hinman v. Gould, 205 Minn. 377, 382, 286 N. W. 364, 366, commenting upon the charge of misconduct of plaintiff's counsel in discussing insurance in that case, said:

"This case calls for the application of the rule that where counsel in his closing argument pursues an improper line of argument which invites or provokes a reply, it is not reversible error if his adversary engages in similar argument in reply even though such argument might otherwise be objectionable," citing Gibson v. Iowa Cent. Ry. Co. 115 Minn. 147, 131 N. W. 1057; McKeown v. Argetsinger, 202 Minn. 595, 279 N. W. 402, 116 A. L. R. 398; Annotation, 78 A. L. R. 1500; Abbott, Civil Jury Trials (5 ed. by Viesselman) § 352i.

In Hurley v. Chicago, M. & St. P. Ry. Co. 48 N. D. 1251, 189 N. W.

322, the North Dakota Supreme Court, where misconduct was charged against plaintiff's counsel as to certain remarks made in his argument to the jury, ruled that the remark was improper but not prejudicial because it was provoked by improper remarks on the part of opposing counsel.

Both parties litigant were represented by able counsel, highly experienced in the trial of similar cases. The presiding judge was experienced, and it can be justifiably assumed fully familiar with the ability, the courtroom experience, and the usual trial methods employed by counsel on both sides, all participants being members of their local bar in the district where the case was being tried. The record indicates that the case was thoroughly tried, but also that much acrimony was displayed between counsel during the trial; that both counsel were sarcastic and caustic during particular periods of the trial. It seems plain that the trial court had to preside over a controversy where able trial counsel, perfectly competent to represent their clients fully in every respect and detail in the trial forum, sought, as sometimes occurs, to outdo, one the other, in exhibiting their abilities and prowess to make the worse the better seem, or vice versa. That the trial court displayed patience throughout the trial will have to be conceded. The court may well have felt that both counsel had gone the limit in inviting retaliation and that any prejudicial effect had been neutralized. We cannot say definitely, as defendant contends, that the trial court committed prejudicial error in failing to admonish the jury as to the specific comments of plaintiffs' counsel to which objections were made and sustained.

We are not to be understood, however, as putting our stamp of approval on some of the remarks of plaintiffs' counsel, which were concededly improper and to which defendant objected and took exception, even though they were not wholly uninvited. Were the lines closely drawn in these actions on the question of liability, we would necessarily have to scrutinize more closely and to a greater degree and with more concern the issue of misconduct of counsel and the rulings of the trial court both as to the sufficiency of the instructions on the issue of misconduct and its ruling on the motion for a new trial.

We think the record discloses that there was altogether too much discussion of and reference to insurance. We think the record including the arguments of counsel indicates that defendant is hardly in a position to complain in that regard. It must be taken from the rulings of the trial court that it was of the opinion that no prejudice resulted from improper remarks of counsel. Concededly, it would have been better if some of the remarks had not been made.

It is to be observed that we said in Patton v. Minneapolis St. Ry. Co. 247 Minn. 368, 376, 77 N. W. (2d) 433, 438, 58 A. L. R. (2d) 921, 930:

"* * * It would have been better, of course, if some of the remarks had not been made but it seems fair to assume that they did not influence the jury. * * * A new trial is never granted for misconduct of counsel as a disciplinary measure but solely to prevent a miscarriage of justice. Whether there should be a new trial for misconduct of counsel rests almost entirely in the discretion of the trial court, and its action will not be reversed on appeal except for a clear abuse of discretion."[1]

In James v. Chicago, St. P. M. & O. Ry. Co. 218 Minn. 333, 339, 16 N. W. (2d) 188, 192, in a situation involving charge of misconduct on the part of counsel in its argument to the jury we said:

"* * * Its counsel having invited the argument of plaintiff's counsel, defendant is in no position to complain of the retaliatory remarks by plaintiff's counsel, though the latter's language was more emphatic than necessary," citing Hinman v. Gould, 205 Minn. 377, 382, 286 N. W. 364, 366, and authorities cited; Olson v. Purity Baking Co. 185 Minn. 571, 242 N. W. 283; United States v. De Vasto (2 Cir.) 52 F. (2d) 26, 78 A. L. R. 336.

This court in the James case quoted as follows from State v. Hass, 147 Minn. 269, 271, 180 N. W. 94, 95 (218 Minn. 340, 16 N. W. [2d] 192):

---

[1]See, Nelson v. Twin City Motor Bus Co. 239 Minn. 276, 58 N. W. (2d) 561; Harris v. Breezy Point Lodge, Inc. 238 Minn. 322, 56 N. W. (2d) 655; 14 Dunnell, Dig. (3 ed.) § 7102.

"* * * The jury is a part of the court in the administration of justice. It is not swayed by every imprudent or wrongful remark of counsel. We must credit it with exercising good judgment."

In Murphy v. Barlow Realty Co. 214 Minn. 64, 73, 7 N. W. (2d) 684, 690, where again there was a charge of misconduct of counsel, this court said that:

"It is the presumption of law that jurors are intelligent, honest, fearless and just. Courts are not justified in assuming that the mind of the jury is of such plastic and unreliable material as to at any unjustified word of debate neglect the instructions, abandon the evidence and disregard their oaths."

Reviewing the record in this case leads us to the suggestion that, where it appears with some degree of certainty that misconduct of counsel in the closing argument will be charged in a motion for a new trial, the trial court ought to expressly instruct the jury to disregard any improper argument if in fact such appears in order that the specific instruction may likely be obeyed and prejudicial error in that respect be minimized, if not wholly avoided.

Finally, we cannot ignore the fact that the verdicts were approved by the trial judge who had heard the evidence and had seen plaintiffs' condition at the trial. Under all these circumstances, while the verdicts may have been liberal, we cannot say upon the record as a whole that the verdicts were so excessive as to require a new trial. Clearly, no prejudicial error appears to have been committed in the court's rulings on evidence.

Having determined that the verdicts, while liberal, are clearly not so excessive as to indicate passion and prejudice, and in view of the fact that the defendant's negligence has not been challenged but practically conceded, we do not find any need for extended consideration of other assignments raised on this appeal.

The finding implicit in the verdict in favor of plaintiffs that defendant was negligent must therefore stand, for the reason that no question

concerning it has been raised here.[2] Where there is a finding of negligence against defendant who on appeal seeks a reversal upon grounds other than the validity of such finding, and decision of the questions raised goes against him, there must be an affirmance. Howard v. Marchildon, 228 Minn. 539, 37 N. W. (2d) 833.[3]

The trial court in the case at bar was in a far better position than we are here to determine whether defendant had a fair trial. It has approved the verdicts and we cannot from the record say that the court abused its discretion. Therefore the order denying defendant's motion for judgment notwithstanding the verdict or for a new trial is affirmed.

Affirmed.

---

[2]Ransford v. Ainsworth, 196 Cal. 279, 237 P. 747; Long v. Tomlin, 22 Tenn. App. 607, 125 S. W. (2d) 171; Paddock v. Tone, 25 Wash. (2d) 940, 172 P. (2d) 481.

[3]See, Hulsey v. Tower Grove Quarry & Const. Co. 326 Mo. 194, 30 S. W. (2d) 1018; Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 16 N. W. (2d) 289, 156 A. L. R. 371.