LEONARD AND MARTHA TURNMIRE v. JEFFERSON TRANSPORTATION COMPANY AND ANOTHER.[1]

March 4, 1938.

Nos. 31,508, 31,509.

[1]Reported in 278 N. W. 159.

308

*Freeman & King*, for appellants.

*Irving H. Green, Robert J. McDonald*, and *William H. DeParcq*, for respondents.

HILTON, JUSTICE.

These are two actions brought by Leonard Turnmire and Martha Turnmire, husband and wife, to recover damages resulting from a head-on collision between a Ford car, driven by Turnmire, and a bus belonging to the defendant Jefferson Transportation Company and driven by the defendant Arthur Ingersoll. Turnmire had a verdict for $12,000, which was reduced by the trial court to $10,000, and Mrs. Turnmire recovered a verdict of $3,000. The actions were tried together below, and these appeals, also consolidated, are taken from an order in each case denying defendants' motion for judgment notwithstanding the verdict or a new trial.

The accident occurred December 2, 1934, on a long S-shaped curve in a paved highway between Spring Valley, Minnesota, and Austin, Minnesota. Some time prior to the accident snow had drifted across this curve, and a snowplow had made a single cut about eight feet wide through this drift, which was some 60 to 80 rods in length. In this cut were two ruts which had been formed by traffic passing through, and estimated at from three to eight

inches in depth. Because of the snow that covered the pavement, its shoulders, and the land adjacent thereto, it was impossible to see the exact location of the pavement. It is clear from the evidence that the path and ruts through the cut formed the highway at the point in question.

The two cars met about dusk, late in the afternoon, at some point in the cut. Both vehicles had their headlights on at the time, those on the bus being dimmed. There were five passengers in the Ford and 13 in the bus.

It is claimed that the evidence is insufficient to sustain a finding that Ingersoll was negligent and that it establishes Turnmire's contributory negligence as a matter of law, and thus bars any recovery by him. Both claims are entirely without merit. We might state at the outset that under the evidence these matters were so obviously a fact issue for the jury's determination that counsel's sincerity in raising them on this appeal seems questionable. In a situation such as that involved here, the evidence, of course, must be considered in a light most favorable to the prevailing party below, and the latter is entitled to the benefit of all inferences reasonably deducible therefrom. In spite of our reiteration of this principle, times almost without number, counsel, although usually frankly acknowledging its existence, will persist in entirely ignoring its application and effect. In the instant case practically every material fact except those already related was sharply disputed in the trial below. It is utterly impossible to reconcile the testimony on such important matters as the speed of the vehicles, the conduct of the respective drivers, and even the place in the cut where the accident occurred. It is not our purpose to review the great mass of evidence in detail. Exclusive of the medical experts, 20 witnesses testified in this action, and the record is extremely long. We shall confine ourselves to a reference to some of the evidence upon which the jury may justifiably have based its conclusions on the issues of negligence and contributory negligence.

There is evidence that the bus was going at least 20 to 25 miles an hour at the time of the impact, and that Ingersoll, prior thereto, had made no effort to get out of the ruts in an attempt to avoid

the collision. Ingersoll testified that he could have stopped the bus in less than 50 feet, yet admitted that he saw the driver of the Ford was in difficulty trying to get out of the ruts when it was 200 to 250 feet from him. A passenger in the Ford testified that in a conversation he had with Ingersoll after the accident the latter, when asked why he did not attempt to slow down or stop before the collision, stated, "I thought you were going to get out of that rut." At least two of the passengers on the bus testified that the cars were only 10 or 15 feet apart when the brakes on the bus were first applied. The imminence of a collision must have been obvious long before that time. Ingersoll's failure to apply his brakes at once upon discovery of the Turnmire car in the ruts is perhaps explained by his belief that the Ford would get out. However, realizing as he did the trouble and obvious position of danger the driver of the Ford was in, that belief would certainly not justify him in proceeding at the same rate of speed until the moment just before the collision, and it was his duty under the circumstances so to conduct himself as to avoid the impending result if at all possible. He was bound to exercise such care as the circumstances required. See Elkins v. Minneapolis St. Ry. Co. 199 Minn. 63, 270 N. W. 914. It is obvious that the jury may well have found from the evidence mentioned that his conduct fell short of the required standard, and further comment on evidence of a similar character is unnecessary.

That there is sufficient evidence to sustain the verdict, insofar as it absolves Turnmire from the charge of contributory negligence, may likewise be summarily demonstrated by briefly referring to his own testimony, which is corroborated in many details by other witnesses. This testimony is substantially as follows: He (Turnmire) was traveling about 35 miles an hour when he came to the drift, and the ruts were on his side of the highway when he first entered the cut. He reduced his speed to 20 or 25 miles an hour and did not see the bus until he had proceeded 150 to 200 feet into the cut. It was then about 650 feet away, and at first he could not tell where it was with reference to the center line of the pavement. He tried to turn his car out of the ruts as soon as he discovered that the bus was in the same ruts, but his efforts were not successful.

The front wheels of his car did come out of the ruts a few times but jumped back again. All this time his car was slowing down and the bus coming right toward him. He set his emergency brake and was traveling about five to ten miles an hour at the time of the collision.

It is evident that Turnmire's conduct was not negligent as a matter of law. From the time he realized that the bus was in the same ruts as his car he made every reasonable effort to get out, and when he encountered difficulty, applied his brakes and attempted to stop. He was still trying to extricate his car from the ruts at the time of the collision. There is ample evidence to sustain the conclusion that he did all that was required of him under the circumstances.

It is unlikely that the accident could have happened under the conditions existing at the time without negligence on the part of one or both drivers. The determination of the facts and the issues of Ingersoll's negligence and Turnmire's contributory negligence were for the jury, and its conclusion that responsibility for the accident rests on the defendants must stand.

Counsel have isolated portions of the court's instructions and assigned them as error. Because of the unusual conditions existing at the time of the accident, many of the rules which ordinarily govern the conduct of those using the highways were of no application. The court necessarily framed its charge with reference to those conditions and performed this task in a most commendable manner. We have subjected the entire charge to close scrutiny and are unable to find any error which could have resulted in prejudice to the defendants.

The court rightly refused to charge that the evidence conclusively established the fact that the bus entered the cut first and was therefore entitled to the right of way over the pass as a matter of law. The evidence was not conclusive on this point, and the matter was properly submitted to the jury under correct instructions as to the rights of the vehicle which first entered the cut or path.

The remaining question has to do with the size of the verdict in favor of Turnmire. At the time of the accident he was 55 years of age. His principal injury was a fracture of the left femur in two

places. One of these was what is called a transverse fracture, and there was some comminution, meaning that the bone was fractured into separate pieces. In addition to the fractures, he suffered abrasions about the face, and there was some laceration and tearing of the tissues with associated hemorrhage about the leg.

Turnmire was placed in a cast which was applied to one leg from the toes to the knee, and on the other leg from the toes up to the rib margin. He was unable to take any meals for the first two weeks following the accident. It was necessary to make adjustments and corrections of the fracture from time to time by what is called a turnbuckle. This process is extremely painful, being applied until the patient cannot tolerate it any further. The first cast was removed at the end of ten weeks and another applied. Turnmire was kept in the casts for 22 weeks and was in the hospital and in bed for all but the last week of this period. Following his release from the hospital, he was confined at home for over two months, used crutches for the next four months, and then a crutch and cane for over a month more. The leg interfered with his driving a car and walking, and had pained him more or less all the time up to the trial.

Turnmire's special damages amounted to some $1,400. In addition, he has suffered the loss of his wife's services. She has been unable to do her housework since the accident and has required extra help with those duties. In this connection it is significant to note that the same jury returned both verdicts. There is no claim that the $3,000 allowed Mrs. Turnmire is excessive or influenced by passion and prejudice, and it seems to be quite conservative. It does not appear likely that the jury would reach the one verdict by the dispassionate deliberation required of it, and then, because of some hidden and unexplained prejudice, give vent to improper and passionate emotions in arriving at the second one.

The reason for the reduction of the verdict by the trial court is best stated in his memorandum:

"The verdict, in as far as amount is concerned, does not appear to be excessive because of passion and prejudice, but the writer is of the opinion, based upon the testimony and the argument of

counsel for plaintiff, that the amount of the verdict includes a substantial amount claimed for loss of income. There is no evidence in the case that will warrant substantial damages on account of lost time. * * * The court feels that the amount of the reduction will fairly remove that item."

We are not prepared to say that the jury's verdict, based on a consideration of the nature and extent of Turnmire's injuries, with all the attendant pain, suffering, and inconvenience they have occasioned, is so excessive as to compel the conclusion that it was influenced by passion and prejudice. While seemingly quite liberal, it has the approval of a very able and conscientious trial judge, and we are not inclined to override his judgment.

To support their argument, defense counsel have cited several cases involving similar injuries. The most recent of these cases was decided in 1915. As precedents, they are of little or no importance because of the changes in economic conditions and the purchasing power of money which have occurred in late years. See 2 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 2595, and cases cited. Further extension of this opinion by a discussion and analysis of our more recent decisions will serve no useful purpose. They have received our careful consideration and will be found collected in 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) §§ 2596, 2597.

Affirmed.

MR. JUSTICE STONE, because of illness, took no part in the consideration or decision of this case.