### REUBEN CARLSON v. DAVID PETERSON.[1]

March 24, 1939.

No. 31,936.

[1]Reported in 284 N. W. 847.

*Charles H. Weyl,* for appellant.
*Freeman & King* and *Chester S. Wilson,* for respondent.

LORING, JUSTICE.

Each of the owner-drivers of two automobiles involved in a collision sued the other for damages, and the cases were consolidated for trial, Reuben Carlson presenting his case as if he were plaintiff in the consolidated case, which resulted in a verdict in his favor. David Peterson comes here upon appeal from an order denying his motion for judgment or a new trial.

The collision occurred about 11 p. m. on November 6, 1937, on highway No. 95 about midway between the village of Marine-on-St. Croix and the city of Stillwater, at a point about 100 feet north of a railroad viaduct known as the Soo Line Underpass where the highway passes under the railroad. The general direction of highway No. 95 is north and south. For a distance of about 400 feet to the north of the point of collision there is a rise in grade of 11 feet six inches and there is a two-degree curve which commences a little north of the crest of this grade and ends about 35 feet to the south of the crest. The highway was surfaced with tarvia about 21 feet wide. The night was dark but clear. About an hour and a half before the collision occurred a man named Thompson had had tire trouble and left his car on the right shoulder of the road entirely off the tarvia and heading south at a point about a car length

south of where the collision subsequently occurred. He was given a ride to Stillwater, where he enlisted the services of Carlson to drive out and change his tire for him. Thompson, Carlson, and a young lady named Rose Pozzini rode out to the Thompson car in Carlson's coupé. Upon his arrival at the Thompson car Carlson discovered that it was the right rear tire that was flat and that it would be a convenience to have his headlights directed upon the place where he would have to work. He also discovered that there was a driveway winding up the hill toward the west from a point immediately behind and north of Thompson's car. This driveway was a narrow, unimproved, single track which curved sharply to the left and uphill almost immediately after leaving the highway. Carlson first headed into this driveway and then backed his car around the Thompson car, swung to his right across the highway to a point somewhat north of a point opposite to the driveway, and then, seeing no traffic coming from either direction, backed across toward the driveway, Thompson opening the right door of the coupé and looking backwards to see that Carlson missed the Thompson car, and Carlson looking out of the left front door which he had opened to see that his car should properly enter the driveway. Rose was in the middle, free to look either to the right or left, and as they were across the west lane of travel she saw the Peterson car approaching from the north and it almost immediately struck them fairly on the side. The skid marks indicated that Peterson applied his brakes about ten feet before he struck Carlson's car. There is no doubt that the question of Peterson's negligence was for the jury, but he earnestly contends that Carlson was guilty of contributory negligence as a matter of law. He also contends that the court erred in submitting to the jury the statutory adequacy of Peterson's lights.

 From the evidence it is apparent that Peterson did not see Carlson's car until he was within 60 or 70 feet of it. Carlson did not state how far away Peterson's car was when he first saw it, but Rose estimated that it was about 600 feet away when she first saw its lights. Carlson's car was then headed somewhat to the northeast with both headlights burning and illuminating the eastern

side of the highway and the terrain beyond. Peterson testified that he was driving about 45 miles an hour. There was no traffic approaching from the south, and Peterson had the entire east lane of the highway on which he might safely pass the Carlson car. We think that the jury might have found that a reasonable man in Carlson's situation might well have anticipated that any car approaching from the north would see his lights and pass to the east. Carlson's car was a convertible coupé with plenty of chromium trimming. His lights shining across the highway and somewhat in a northeasterly direction were conspicuous warning of his presence. The distinction is plain between this case and Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145, cited by appellant, where plaintiff in daylight was attempting a left turn in the face of the obvious defendant's car, oncoming at five times his rate of speed. It is true that Carlson was making an unusual movement, but if a man of ordinary prudence might, in the eyes of the jury, have made the movement under the circumstances, we do not regard it as forbidden by the traffic act, as Peterson claims, simply because it is not specifically authorized by that act. Except as specifically covered, the act does not supersede common law or common sense. Licha v. N. P. Ry. Co. 201 Minn. 427, 276 N. W. 813. State v. Mandehr, 168 Minn. 139, 209 N. W. 750, cited by appellant, holds only that the traffic code then in force expressly excluded local ordinances regulating the use of motor vehicles. The distinction between the present traffic act and the workmen's compensation act under consideration in Hyett v. Northwestern Hospital, 147 Minn. 413, 180 N. W. 552, cited by appellant, is too obvious to require comment. The questions of negligence and contributory negligence were for the jury.

■ The traffic code in force at the time of the collision under consideration required a distribution of light from automobile headlights of sufficient intensity to reveal persons and vehicles at a safe distance in advance of the vehicle. Peterson testified that his lights would reveal an object 100 feet ahead of his car, and although he was given plenty of opportunity to add to this distance he did not do so. We think that it was at least a question for the jury to

24

determine whether his lights conformed to the statutory standard and whether their failure to do so had a causal connection with his failure to see Carlson's car in time to avoid hitting it. The trial court did not err in submitting this question to the jury.

The order appealed from is affirmed.

Mr. Justice Hilton, being incapacitated by illness, took no part.

[1]Reported in 284 N. W. 849.