NICK T. KAAN,

*Plaintiff and Appellant,*

vs.

GREG KUHN,

*Defendant and Respondent.*

NICK T. KAAN,

*Plaintiff and Respondent,*

vs.

GREG KUHN,

*Defendant and Appellant.*

(Nos. 2351 and 2352; December 9, 1947; 187 Pac. 2d. 138)

For the plaintiff and appellant in Case No. 2351 the cause was submitted upon the brief and also oral argument of Mr. William G. Watt of Lusk, Wyoming.

## OPINION

RINER, Chief Justice.

These two proceedings by direct appeal arose upon a single record made in an action brought in consequence of a collision between two automobiles on a county road ten or twelve miles southeast of the Town of Lusk, Wyoming. The appeals were brought to question the propriety of a judgment of the district court of Niobrara County rendered upon the conclusion of the trial of the action. Both cases can be disposed of by a single opinion.

Nick T. Kaan as plaintiff brought the action in the court just mentioned to recover damages from Greg Kuhn as defendant on account of the injuries sustained in the collision by the automobile owned by the former. It was charged in plaintiff's petition that the accident happened in this wise: That the plaintiff on April 6, 1944 was driving his car in a northerly direction while the defendant's employee was driving the defendant's automobile in a southerly direction; "That the county road on which said automobiles were traveling was a narrow road with two parallel car tracks in or near the center of the road. That said tracks had become worn and rutted and that it was difficult and dangerous to turn the wheels of a fast moving automobile from them. That the condition of this road and the customary manner of coursing over it was or should have been within the knowledge of the Defendant and his agent, but that notwithstanding all of the same, the said agent of the Defendant was driving the Defendant's automobile at such a rate of speed that said vehicle was not within his control and he failed either to stop or turn

out of the road to avoid collision with the automobile of Plaintiff"; that the unlawful and negligent handling of defendant's car caused the collision and the resulting injuries to plaintiff's automobile for which he claimed damages in a named amount.

The defendant filed an answer and cross petition. In the answer he alleges that: "said plaintiff was driving his said automobile in a negligent, reckless, wrongful and unlawful manner with no proper regard for the condition of said road and the rights of others using the same"; defendant also denied that Jack Dee Ray, his employee "drove defendant's automobile at a rate of speed whereby defendant's motor vehicle was not within the control of said Jack Dee Ray and further denies that there was any failure to turn out of said trails to avoid collision with plaintiff's automobile, but on the contrary alleges that said Jack Dee Ray turned his wheels out of said tracks and trails in time to avoid collision with plaintiff, but that plaintiff in a negligent, reckless, wrongful and unlawful manner failed to turn to his right or east side, of the center of said road and failed to have his said automobile under control and did then and there negligently, recklessly, wrongfully and unlawfully drive into and collide with the left side of defendant's automobile".

Defendant's cross petition alleged that plaintiff drove his automobile "in such a negligent, reckless, wrongful and unlawful manner that the plaintiff's said automobile ran into and collided with the motor vehicle of the defendant" so that his car was badly injured and wrecked for which defendant claimed a stated sum as damages.

The plaintiff joined issue by a reply filed and generally denied the averments of defendant's cross petition.

The cause was tried to the court without a jury and a finding was made that the parties were both proxim-

ately responsible for the accident. Findings were also made in favor of the defendant and against the plaintiff on the latter's petition and in favor of the plaintiff and against the defendant on defendant's cross petition and that each party should pay his own costs. Judgment was entered in accord with these findings. Each party being dissatisfied with the court's disposition of the litigation, duly filed notices of appeal and the record was within proper time brought here for review.

In Case No. 2352 wherein Nick T. Kaan is plaintiff and respondent and Greg Kuhn is defendant and appellant no briefs were filed by either part, hence no further notice need be taken of that matter other than to direct that an order of dismissal should be entered. In Case No. 2351, Kaan being plaintiff and appellant and Kuhn defendant and respondent, the appellant filed a brief and submitted oral argument in connection with it. The respondent did neither. It is, therefore, incumbent upon us to consider the contentions of plaintiff and appellant Kaan in that case.

It is assigned as error that the judgment against the plaintiff is not sustained by sufficient evidence and is contrary to law and it is insisted that plaintiff's conduct in connection with the accident was not negligent nor unlawful and hence not actionable and not a proximate cause of the collision.

"Under assignments of error of this character this court has frequently held that we: 'must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it'." Dulaney vs. Jensen 63 Wyo. 313, 181 Pac. 2d 605, 606 and cases cited.

To be considered in connection with the application of this rule is the following summary of the testimony

given on the trial of the case which details to some extent how and why the accident occurred:

The plaintiff, Kaan, stated on direct examination that he resides in Lusk and also on his ranch twelve miles southeast of Lusk; that on April 6, 1944 he was involved in an automobile accident which occurred about two miles north of his ranch on the county highway when he was driving his car north; that the brakes and his car generally, which was a Lincoln Zephyr, were in a good condition; that the other car involved in the accident was Kuhn's Chevrolet Coupe being driven by Jack Dee Ray; that the land is rolling at the scene of the accident, there being a short dip, then another dip, and a little up grade and then a long hill about 150 feet down hill in the direction Kaan was going; that his car was in the short dip and when he came up on the top of the short slope he saw the other car about 110 or 120 feet distant coming south; that witness was driving between thirty-five and forty miles per hour; that the road was dry, sandy soil, quite a bit of loose sand, and was really only a two track road due to ruts in it; that these ruts were five or six inches deep; that from the right hand track to the shoulder of the road next the borrow pit was about six feet; that when he saw the other car approaching, he applied his brakes and tried to get out of the ruts; that he had trouble getting out of the rut, there being about eight inches of blown sand in the weeds; that his car cramped up against loose sand and stopped forty-five feet after the brakes were applied; that the approaching car looked for a time it was heading straight up the road and then all at once it made a quick turn off; then the two cars collided, the left side of plaintiff's car hit the left side of the Kuhn car; that plaintiff's car struck defendant's automobile about at the door in its center; that at that time plaintiff's car was "practically to a stop"; that after the impact, defendant's car traveled

about seventy-five feet, turned over and around, traveling up hill; that after the accident plaintiff's left front wheel was between the two tracks where you drive and the other in loose sand to the east.

On cross examination this witness stated also: That it was sixty-five feet from the top of the hill over which he came just prior to the accident to the place of impact; that when he came over this little knoll he first saw the Kuhn car about one hundred or one hundred and ten feet distant; that there were just two tracks for a car and each of these were about a foot wide; that the reason he could not get out of the ruts to the right was because of "loose sand blowed up out of the road and the weeds and going down hill"; that on May 7, 1944 he made a statement that the road being sandy he felt he could not swing out safely and that his car was only about eighteen inches over when he struck the other car; that he tried gradually to swing out under the circumstances; that he started to brake about forty-five feet from where he hit the other car; that his car was almost stopped; that he was barely moving when the collision took place; that at the time of the collision, half of Kuhn's car was in front of plaintiff's car, the rear half, the rear wheels in the center of plaintiff's car; that the front end of the Kuhn car was just about off the west grade of the road; that plaintiff struck that car on its left side right back of the coupe door; that on May 7, 1944 plaintiff also made a statement that "when we came to a stop Kuhn's car was about thirty feet from where he struck, having rolled over and back on its wheels."

Cecil Kaan, called as a witness for the plaintiff, who was riding in the seat with Ray, the driver of the Kuhn car, on direct examination stated: That he saw plaintiff's car one hundred forty feet away before the impact; that he called Ray's attention to the approaching

car and the latter turned the Kuhn car very quickly. On cross examination this witness said that he was a nephew of plaintiff; that at the time of the impact the left wheel of Kuhn's car was in the middle of the two tracks; that the left front wheel of plaintiff's car was out of the west track to the right going north; that as plaintiff's car turned out, there was sand on the right hand side; that the front end of the car was clear out of the tracks.

Jack Ray testified for the defendant on direct examination: That he is the son-in-law of plaintiff; that he drove Kuhn's automobile April 6, 1944 and that it was in good condition including brakes; that he was driving a mail route, had started south and he just came over one hill and another car was coming over the top on the other side and he made a turn to the right as soon as he could and thought he had completely passed but pretty soon there was a banging noise and the other car had hit his car; that at the time of the collision he was driving between thirty-five to forty-five miles per hour; that plaintiff at that time was not almost stopped, he was still rolling; he was slowed down, he wasn't going too fast; that at the time of the collision the two front wheels of the car he was driving were out of the main tracks; that the right rear tire was out of the track also; that it looked to Ray like his right front tire was on the west side of the grade; that it was about fifty feet from the top of the hill to the place of impact; that the front wheels of Kaan's car directly after the accident were out of the tracks about ten, eighteen or twenty inches; that the rear tires were close to the trails; that there was plenty of room on the east side of the center line of the road for a car to pass; that plaintiff said after the accident that "he should have turned out".

Al Guibault, a witness for the defendant, stated that he was driving a school bus a half or three fourths of

a mile behind Kaan's car; that where the accident occurred there were two car trails where the road was, little sandy, two nice trails there; that coming over the hill going north he had no difficulty in stopping the bus before he got to the Kaan car; that it looked like Kaan started to turn off. On cross examination Guibault said he was driving about twenty five miles per hour.

Section 60-506 W. C .S., 1945 (Section 72-204 W. R. S. 1931) declares the well-known "law of the road" to be:

"Whenever any person, traveling with any vehicle or conveyance on any road or public highway in this state, shall meet another vehicle or conveyance traveling in an opposite direction it shall be the duty of the driver of such vehicle or conveyance to turn promptly to the right of the center of the traveled road and to remain on the right of the center of the traveled road until such vehicle or conveyance has passed."

Section 60-501 W. C. S. 1945 (Laws of 1939 Ch. 126, Section 27) provides so far as material here:

"(a)    No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing."

After prescribing stated speeds of vehicles "where no special hazard exists" the statute continues:

"(c)    The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed where any hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

In the case of Green vs. Moore, 4 La. App. 495 it appeared, as stated in the opinion:

"that the road on which the collision occurred was eighteen to twenty feet in width, and that in the course

of vehicles passing over the roadway, 'ruts', the width of the vehicles and several inches in depth, had been cut, which were approximately in the center of the road, and that the drivers of the respective automobiles were driving in these ruts. At the time of the collision, it was raining and the roads were slippery."

Under these circumstances, the court said:

"In this situation, each of the drivers, if not paying too strict attention to the center of the roadway, were bound to concede to the other a part of the roadway between the ruts and to take action looking to this concession at a time when it would be possible to do so or to stop their cars."

It was pointed out also that both car drivers insisted that they attempted to concede a part of the way but it appeared that the driver of the defendant's car (his son) wholly failed to do that and plaintiff succeeded only to the extent of getting the front wheels out of the ruts and placing his car diagonally across the roadway before the collision; the evidence disclosed also that plaintiff had stopped his car for an appreciable time but that the driver of the defendant's car did not see the plaintiff's automobile until it was too late for him to turn out of the roadway or stop his car. In the case at bar it would appear that each driver saw the other but was approaching the meeting point too rapidly under the circumstances disclosed to have a due control of his car. Affirming a judgment for the plaintiff under the recited facts, the court further announced:

"The rights of the parties were the same, each being bound to anticipate the presence of the other, and while driving in the ruts in the center of the roadway they were bound to have their cars under such control and to maintain such a lookout as would enable them to concede a part of the roadway or to stop their cars in time to avoid the collision; and we are of the opinion that the judgment which found that defendant's son was negligent in that he did not have his car under such control and that he did not maintain such lookout

as enabled him either to turn out of the road or to stop his car, is supported by the evidence."

The case of Turnmire vs. Jefferson Transp. Co., 202 Minn. 307, 278 N. W. 159 involved a head on collision between a bus owned by the transportation company and a Ford car. Two actions were brought against the company and another person by Turnmire and his wife to recover damages for injuries sustained in the accident. The car was being driven by Turnmire and the bus by an employee of the company named Ingersoll. The actions were consolidated for trial. Judgments were given each of the plaintiffs upon jury verdicts in their favor. The two appeals by the defendants were also consolidated in the appellate court.

Detailing briefly the circumstances involved, the court said:

"The accident occurred December 2, 1934, on a long S-shaped curve in a paved highway between Spring Valley, Minn., and Austin, Minn. Some time prior to the accident, snow had drifted across this curve and a snowplow had made a single cut about 8 feet wide through this drift, which was some 60 to 80 rods in length. In this cut were two ruts which had been formed by traffic passing through, and estimated at from 3 to 8 inches in depth. Because of the snow that covered the pavement, its shoulders, and the land adjacent thereto, it was impossible to see the exact location of the pavement. It is clear from the evidence that the path and ruts through the cut formed the highway at the point in question.

"The two cars met about dusk, late in the afternoon, at some point in the cut. Both vehicles had their headlights on at the time, those on the bus being dimmed. There were five passengers in the Ford and thirteen in the bus.

"It is claimed that the evidence is insufficient to sustain a finding that Ingersoll was negligent and that it establishes Turnmire's contributory negligence as a matter of law, and thus bars any recovery by him. Both claims are entirely without merit."

Indicating how the evidence in such a case should ordinarily be viewed, it was pertinently remarked:

"In a situation such as that involved here, the evidence, of course, must be considered in a light most favorable to the prevailing party below, and the latter is entitled to the benefit of all inferences reasonably deducible therefrom. In spite of our reiteration of this principle, times almost without number, counsel, although usually frankly acknowledging its existence, will persist in entirely ignoring its application and effect. In the instant case, practically every material fact except those already related was sharply disputed in the trial below. It is utterly impossible to reconcile the testimony on such important matters as the speed of the vehicles, the conduct of the respective drivers, and even the place in the cut where the accident occurred."

The evidence relative to the appellants' negligence was summarized thus:

"There is evidence that the bus was going at least 20 to 25 miles an hour at the time of the impact, and that Ingersoll, prior thereto, had made no effort to get out of the ruts in an attempt to avoid the collision. Ingersoll testified that he could have stopped the bus in less than 50 feet, yet admitted that he saw the driver of the Ford was in difficulty trying to get out of the ruts when it was 200 to 250 feet from him. A passenger in the Ford testified that in a conversation he had with Ingersoll after the accident, the latter, when asked why he did not attempt to slow down or stop before the collision, stated, 'I thought you were going to get out of that rut'. At least two of the passengers on the bus testified that the cars were only 10 or 15 feet apart when the brakes on the bus were first applied. The imminence of a collision must have been obvious long before that time."

The evidence in regard to Turnmire's conduct as bearing upon his claimed contributory negligence was stated to be:

"He (Turnmire) was traveling about 35 miles an hour when he came to the drift, and the ruts were on his side of the highway when he first entered the cut. He

reduced his speed to 20 or 25 miles an hour and did not see the bus until he had proceeded 150 to 200 feet into the cut. It was then about 650 feet away, and at first he could not tell where it was with reference to the center line of the pavement. He tried to turn his car out of the ruts as soon as he discovered that the bus was in the same ruts, but his efforts were not successful. The front wheels of his car did come out of the ruts a few times, but jumped back again. All this time his car was slowing down, and the bus coming right toward him. He set his emergency brake and was traveling about 5 to 10 miles an hour at the time of the collision."

The controlling idea, evidently, which led the reviewing court to affirm both judgments as the facts presented were concerned is found stated thus:

"It is unlikely that the accident could have happened under the conditions existing at the time, without negligence on the part of one or both drivers. The determination of the facts, and the issues of Ingersoll's negligence, and Turnmire's contributory negligence were for the jury, and its conclusion that responsibility for the accident rests on the defendants must stand."

While judgments for the plaintiffs in the two cases quoted from above were upheld, it is to be observed that the evidence in them embodied some controlling factors which are not in the case before us now. It will be noted especially that in each of these cases appellants came to the reviewing courts with either jury or court finding of fact against them. However, the legal principles mentioned as governing highway traffic and those perintent to the consideration on appeal of the evidence presented would appear to be of material aid here. Both were cases too where rutty highway conditions confronted motorists.

The case at bar is also in some respects similar to our case of Johnston vs. Wortham Machinery Co., 60 Wyoming, 301, 151 Pac. 2d 89. That case also grew out of the collision of two automobiles and the plaintiff

sued for damages to his motor truck inflicted by the impact of the two cars. The defendant likewise claimed damages to his car on that account and filed a cross petition. The trial court found that the evidence failed to sustain either plaintiff's claim that the negligence of the driver of the defendant's car proximately caused the collision or that the collision was brought about by the carelessness of the plaintiff's employee. Both plaintiff's action and the defendant's cross action were dismissed. On plaintiff's appeal we affirmed the judgment. There the accident occurred on a highway under construction. There was evidence that authorized the trial court to find that the plaintiff's driver did not obey the law of the road by turning to the right to avoid the oncoming vehicle of the defendant and that the defendant's employee was driving too rapidly under the circumstances shown.

In the case at bar it is reasonably clear that both Kaan and Ray were familiar with the road in question, the former traveling over it between his residence in Lusk and his residence on his ranch, and the latter regularly delivering mail along the county highway. They knew, or should have known, of the possibility of approaching cars (Wright vs. Ponitz, 44 Cal. App. 2d 215, 112 Pac. 2d 25) and that the hills on the road would obscure their vision of such cars until both vehicles were comparatively close to a meeting point. They both knew, or should have known, of the bad condition of the highway with ruts therein which would make it extremely difficult to obey promptly the law of the road in turning to the right to avoid an oncoming vehicle. Yet, both admit that they were driving under these conditions at a speed that moved their respective cars over the highway at from 51.3 to 58.7 feet per second. That left about 2 seconds driving time after the two drivers saw each others cars in which to get out of the ruts in which they were driving and yield

sufficient amount of the roadway to enable each to pass the other safely. True, they applied their brakes and endeavored to slow their cars in order to avoid the accident. Yet even the most capable driver must allow for reaction time. It is common knowledge that at least half a second after danger appears is required for the average motorist to transfer his foot from accelerator throttle to brake. So we find the Ohio Court of Appeals in Ashbrook vs. Cleveland Ry. Co. 34 N. E. 2d (Oh. App.) 992 saying:

"It is a fact of mathematical determination that a vehicle moving at the rate of 35 miles per hour is traveling about 52 feet per second. It is a matter of common knowledge also that the so-called reaction time of the average man (that is the time elapsing from the moment one sees danger until the moment when he can actually get into action to avoid it) is about three-quarters of a second."

See also Murray vs. Banning, 17 Wash. 2d 1, 134 Pac. 2d 715; Thomasson vs. Henwood, 235 Mo. App. 1211, 146 S. W. 2d 88; Berton vs. Cochran, — Cal. App. —, 185 Pac. 2d 349. The outcome of the matter demonstrated that both cars were moving too rapidly for the drivers thereof to have that control over their vehicles demanded by the condition of the road. Plaintiff's daughter testified as to that condition: "ruts in the road all over, bad road".

We think that the district court could properly have reached the conclusion that both car drivers were at fault in proceeding under such conditions at too high a rate of speed, that they did not have their cars under such control as would enable them to obey the duty imposed upon them by law "to turn promptly to the right of the center of the traveled road and to remain on the right of the center of the traveled road until" the meeting vehicles had passed; and that both parties were proximately responsible for the accident.

Then too, the evidence would appear uncontroverted that there was "plenty of room on the East side of the center line of the road for a car to pass". While further turning of plaintiff's vehicle to the right may have been difficult, as counsel for plaintiff argues, there is no testimony that it could not have been done if plaintiff had not been driving so rapidly and had his car under such control as to meet the situation which he knew, or should have known, might arise, viz., the sudden appearance of an opposing vehicle in front of him and rutty road tracks out of which it would not be easy or safe to drive his car at high speed.

All things considered upon the proofs submitted and the law applicable thereto as we find it to be, we can hardly do otherwise than affirm the judgment of the district court as it deals with Case No. 2351 and dismiss the appeal in Case No. 2352.

No. 2351, *Judgment Affirmed.*

No. 2352, *Appeal Dismissed.*

KIMBALL, J., and BLUME, J., concur.