# LAVERN COBLE v. CLARENCE W. LACEY AND OTHERS. TINA LARSON AND ANOTHER, RESPONDENTS.

90 N. W. (2d) 314.

May 23, 1958—No. 37,234.

424

*David R. Roberts, Arthur J. Donnelly,* and *Sullivan, Stringer, Donnelly & Sharood,* for appellant.

*Rosengren, Rufer & Blatti,* for plaintiff respondent.

*I. L. Swanson,* for defendant respondents.

NELSON, JUSTICE.

Plaintiff brings this action to recover for personal injuries suffered while a guest passenger in a 1955 Dodge automobile owned and driven by defendant Clarence W. Lacey.

The accident occurred at approximately 5:30 p. m. on June 22, 1955, while Lacey was proceeding westerly on State Highway No. 55 in the vicinity of what is known as the Rollo Jandt driveway. The road is tarvia surfaced and approximately 25 feet in width with shoulders and a marked centerline. Lacey was returning to his farm near Wendell from Elbow Lake in Grant County, Minnesota, where he had gone to transact business. Plaintiff occupied the front seat when the Lacey car collided with a 1942 Ford automobile owned and driven by defendant

Tina Larson. While Lacey was proceeding in a westerly direction, Tina Larson, who had been proceeding easterly on the same highway, was making a left turn over the centerline into the Jandt driveway connecting on the north side of the highway. The collision shortly thereafter occurred.

According to Lacey's own testimony he had driven by this point "Too many times to count." He was entirely familiar with the highway, the location of the driveway, and the area where the accident occurred. In fact, both drivers were familiar with the road and with the driveway. It appears from the testimony that Lacey and his passenger first saw the Larson car approaching from the west when they were about 420 to 500 feet east of the point where the accident later occurred. The Lacey car was then traveling westerly over the crown of a hill. The speed zone in the area was 60 miles per hour. Lacey was traveling 55 to 60 miles per hour at the time. The day was clear and the sun was shining. There was nothing to impede or obstruct the visibility of either driver. The highway was clear of other cars.

Coble testified that when he first saw her, Tina Larson was in the act of turning to the left across the centerline of the highway in a northeasterly direction toward the Jandt driveway. Lacey in his testimony indicated that when he first saw her car approaching it was over the centerline pointing northeasterly but that she was weaving so that he was unable to be certain as to what she intended to do. She was driving slowly, her speed at that time being about 15 miles per hour.

Tina Larson testified that when she reached the vicinity of the Jandt driveway she looked ahead to the east and saw no car in sight; that she then started her turn to the left, northeasterly toward the driveway; and that she had crossed the centerline when she first saw Lacey's car as it came over the crown of the hill. She admits that she did not give a hand signal (having no directional light) when in the act of turning to the left across the centerline. Her explanation is that, when she started her turn toward the driveway, there was no car in sight ahead of her to the east and that, when she first saw the Lacey car, she had commenced her turn and simply continued toward the driveway without giving a hand signal because she thought it was then unnecessary. She also said she did not have time to signal then because of the baffling speed at which the Lacey

car was approaching.

Lacey testified that when he first saw the Larson car he took his foot off the accelerator, letting the car coast, but did not apply his brakes; that when 75 to 76 feet east of the Larson car, which it is admitted was traveling slowly and had not yet cleared the north lane of the highway, he first applied his brakes; that he was then traveling 50 to 55 miles per hour. The testimony is undisputed that following the application of his brakes his car left solid skid marks 75 to 76 feet long in the north lane, partially on the shoulder. After the brakes were applied, the rear end of Lacey's car swerved toward the north edge of the highway. When the collision occurred, either on or at the westerly edge of the driveway, the right end of Lacey's front bumper hit the center of the front bumper on the Larson automobile. The debris scattered 3 to 4 feet in from the north edge of the highway. The Larson car was propelled across the highway to the southwest and came to a stop 54 feet from the point of impact. The Lacey vehicle came to a stop on the north side of the highway with the front end on the shoulder and the rear end in the ditch. When stopped, the front end of the Lacey car was 11 feet west of the spot where the impact occurred.

Applying the most favorable aspect to plaintiff's evidence, which we are required to do, there is proof that Tina Larson had been traveling easterly on Highway No. 55 intending to turn into the Jandt farm home by means of the private driveway connecting with the highway on the north; that she started to turn before she reached a point opposite the driveway and was angling toward it in a northeasterly direction for purposes of entering; that she was at the time traveling at a slow speed; that the road ahead toward the crown of the hill was clear when she commenced her left turn across the centerline; that it was while she was in the act of turning toward the driveway that she saw Lacey's car come over the hill at a baffling rate of speed; that the reason she had not signalled before commencing the turn was that there were no cars in sight; and that upon seeing the Lacey car she felt the best course to pursue was to continue across the highway and into the driveway before Lacey's car got there or, if not, he could then go around her by taking the south lane. Mrs. Larson claims that she continued in a direct path toward the driveway during all of the time that the two vehicles were in

view of each other. It is undisputed that Lacey saw the Larson car turn to the left over the centerline and it is also undisputed that Lacey knew all about the location of the driveway and the manner in which it flanged out on both sides as it connected with the north edge of Highway No. 55.

Three separate actions were consolidated for trial with that brought by plaintiff. Lacey alone moved the court for a directed verdict at the close of the evidence upon the following grounds:

(1) There was no evidence from which a jury could find that negligence on the part of Lacey contributed to cause the accident or alleged injury to plaintiff.

(2) As a matter of law the accident and injury to plaintiff was due to and caused by carelessness and negligence of Mrs. Larson and particularly the manner in which she operated her automobile in getting on the wrong side of the highway before she reached the driveway and in attempting to make a turn into the driveway without giving a signal as required by law.

The trial court denied the motion. The jury returned a verdict for plaintiff against both defendants for $6,500 and judgment was entered thereon. Lacey did not move for a new trial. He alone moved the trial court for judgment notwithstanding the verdict upon the grounds:

(a) That Lacey was entitled to a directed verdict on the evidence; (b) that the evidence showed no negligence of Lacey which was a proximate or contributing cause of the accident and of plaintiff's injuries; and (c) that the accident was wholly due to and solely caused by the carelessness and negligence of defendant Tina Larson.

This motion was denied and Lacey appeals from the judgment and order.

Lacey contends that the evidence does not sustain a verdict of negligence against him; that his acts were not a proximate cause of the accident; and that the trial court erred both in refusing to direct a verdict in his favor and in refusing to grant him judgment notwithstanding the verdict. His contentions in that respect are based mainly on the premise that the negligence of the defendant Tina Larson (who has not appealed) in driving on the wrong side of the highway and in failing to

signal her intention to turn into the driveway constitutes the sole and only negligent acts causing the accident.

■ Lacey further contends that the trial court committed error in not instructing the jury from M. S. A. 169.18, subd. 1, 2, 5(a, b[3]), relating to the duty of defendant Tina Larson to keep on her right half of the highway. No such request was made in writing or otherwise. No exceptions were taken to the charge by counsel for either party.

An examination of the charge indicates that the court carefully instructed the jury that negligence may also consist in the violation of the rules of our Highway Traffic Regulation Act. The trial court first read the section governing speed, followed by the section on speed limits, and § 169.18, subd. 1, under driving rules, omitting the exceptions thereto which the court stated were not important to the facts in this case. Thereupon the court read the provision which governs the turning of a vehicle in entering a private road or driveway (§ 169.19, subds. 4, 5):

"No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in this section, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a highway unless and until the movement can be made with reasonable safety, and then only after giving a clearly audible warning by sounding the horn if any pedestrian may be affected by the movement or after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by the movement.

"A signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning."

Instructions were also given on the rules as to signals by the driver and the rule that the violation of one of these traffic regulations is only prima facie, not conclusive, evidence of negligence. That portion of the instructions concluded in the following words:

"Now, aside from any rules of the road as we call these rules, a person must at all times use due care in keeping his vehicle under proper control. He must also at all times use due care in keeping a proper lookout for other vehicles and other traffic and persons upon the highway.

Failure to do so constitutes negligence.

"Now, you are also instructed that in this case, both drivers had a right to assume that the other would exercise due care, and that he or she would not be negligent, and he had a right to assume, or to make that assumption until in the exercise of reasonable care the contrary appeared. Now that applies to both drivers. Each had a right to assume that the other would not be negligent until in the exercise of reasonable care the contrary appeared, or should have appeared."

The parts of § 169.18 omitted by the court, of which Lacey complains, apply to drivers of vehicles passing each other going in opposite directions and provide the rule as to how vehicles shall be driven in overtaking and passing another vehicle proceeding in the same direction, referring in the concluding paragraph of subd. 5 to situations where a distinctive centerline is marked. We see no error in the trial court's omission of certain parts from § 169.18. None apply to a driver crossing a highway for the purpose of entering into a private driveway. It is well settled that a particular provision of a statute cannot be read out of context but must be taken together with other related provisions to determine its meaning. Kollodge v. F. and L. Appliances, Inc. 248 Minn. 357, 80 N. W. (2d) 62.

■ We have repeatedly held that the violation of any of the provisions of the Highway Traffic Regulation Act does not establish negligence as a matter of law. Pettit v. Lifson, 238 Minn. 349, 57 N. W. (2d) 34. The jury could find from the particular facts in this case that Lacey was negligent in not sooner anticipating the peril which Mrs. Larson finally faced in purposely crossing the highway to enter into the driveway.

Highway No. 55 is a public highway and Mrs. Larson had a right to be upon it and was not thereby a trespasser. She was not thereby committing an unlawful act, though she may well have been prima facie negligent in the manner in which she was driving. The relative rights of pedestrians and vehicles on a public highway are equal and reciprocal. 8 Dunnell, Dig. (3 ed.) § 4166(4); Forseth v. Duluth-Superior Transit Co. 202 Minn. 447, 278 N. W. 904. Mrs. Larson would not necessarily be negligent because of crossing the highway at the point she did in order

to enter the driveway; but in doing so she was required to observe the statutory rules and to exercise due care for her own safety as well as the safety of others who were equally entitled to use the highway. LeVasseur v. Minneapolis St. Ry. Co. 221 Minn. 205, 21 N. W. (2d) 522. While the particular facts and circumstances of a case, when conclusively shown, may make the negligence of the driver a question of law for the court, we find nothing in this record to make the issue of Lacey's negligence a question of law. As we see it the issues of negligence as to both defendants were questions of fact for the jury's determination. It is only where the evidence is so conclusive as to leave no room for difference of opinion that the issue of negligence, as well as that of contributory negligence, ceases to be one of fact. Kelley v. Chicago, B. & Q. R. Co. 142 Minn. 44, 170 N. W. 886; Wilson v. Davidson, 219 Minn. 42, 17 N. W. (2d) 31. Clearly that is not the situation here.

██ Lacey was, as is every driver, under a duty to exercise due care. Carlson v. Peterson, 205 Minn. 20, 284 N. W. 847. In Kapla v. Lehti, 225 Minn. 325, 334, 30 N. W. (2d) 685, 691, this court said:

"In numerous of our decisions we have held that the driver of an automobile on his own right side of the road must exercise due care to avoid collisions with other vehicles, *even with those on his side of the road,* and that, while he may assume that an approaching vehicle on his side of the road will turn and get on its right side, he will not be permitted to act on the assumption where the factual basis for it has disappeared, as, for example, where it becomes apparent that the driver on the wrong side of the street either will not or cannot turn back to his right side. The fact that a motorist is on the wrong side of the road will not justify another driver in running him down."[1] (Italics supplied.)

The court went on to say (225 Minn. 335, 30 N. W. [2d] 691):

"* * * The notion that a driver of an automobile may disregard dangers created by the presence of another on his side of the road has

---

[1]See, Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327; Schweikert v. Peters Sausage Co. 206 Minn. 596, 289 N. W. 828; Kulla v. E. B. Crabtree Co. 203 Minn. 105, 280 N. W. 16; Turnmire v. Jefferson Transp. Co. 202 Minn. 307, 278 N. W. 159; Olson v. Byam, 176 Minn. 619, 224 N. W. 256.

never had judicial sanction. In Dentinger v. Uleberg, 171 Minn. 81, 83, 213 N. W. 377, we pointed out that there is no 'inflexible rule' against a driver getting on the left side of the road. See, 5 Am. Jur., Automobiles, § 286. *The rule is that it is the duty of the driver of an automobile on the right side of the road meeting another automobile on the same side to exercise due care to avoid a collision.* In the particular case, it is a fact question whether factual basis for an assumption by the driver on the right side that an oncoming driver on the same side would turn over to the latter's right side has disappeared and whether, under the circumstance, it was necessary and practicable for the former to stop or turn out to avoid a collision and the exercise of due care required him to do so." (Italics supplied.)

Although Lacey had a right to assume that the Larson vehicle would return to its right side of the highway, it would appear that under all the circumstances the factual basis for this assumption had disappeared before the collision occurred. Lacey had an opportunity to view the movements of the Larson car for a distance of from 420 to 500 feet and was entirely familiar with the location of the driveway. A reasonable inference could have been drawn from the position and movement of the Larson vehicle that it was going to turn into the driveway even though Tina Larson did not signal her intentions after Lacey's car came into view. The jury could find that Lacey no longer had the right to assume that the Larson vehicle would return to the lane it had left in view of the position of the vehicle on the highway and its immediate relation to the driveway, particularly since Lacey had been long familiar with the position of the driveway. Even though Tina Larson had negligently entered the north lane of the highway upon which Lacey was traveling, he was not relieved from the duty to exercise due care in order to avoid a collision. Whether he exercised the required degree of care is a fact question for the jury, and the jury's determination upon that issue will not be disturbed by this court unless the evidence as a whole discloses no reasonable basis upon which the jury could have found him negligent. Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395; Cofran v. Swanman, 225 Minn. 40, 29 N. W. (2d) 448.

We think the record discloses ample evidence upon which the jury

could find Lacey negligent as a proximate cause. Particularly relevant in this respect are the following questions put to Lacey and his answers:

"Q. Now, you weren't going so fast at the time you first saw Mrs. Larson's car that you couldn't have stopped your car at that time and avoided this accident, were you?

"A. If I had known she was going to turn right away, I could have stopped.

"Q. You could have stopped your car?

"A. That is right.

"Q. At the time you first saw her and you started to slow down your car at that time, you could have brought it under control?

"A. If she would have had signal lamps or her arm sticking out—

"Q. But my question was, you could have brought your car under control and avoided the accident, isn't that true?

"A. Yes.

"Q. When you first saw her up there, and you wouldn't have come anywhere near colliding?

"A. If I had known what she was going to do, I could have avoided it."

It was for the jury to determine the accuracy of the observations of the various witnesses including Lacey and the credibility of the resulting testimony.

It seems quite obvious that, if Lacey had kept a proper lookout and made timely application of his brakes to reduce his speed, he would not have collided with the Larson car. As we view it the evidence in this case clearly presents jury issues as to Lacey's negligence with respect to lookout and speed, as well as management and control of his car. See, Kachman v. Blosberg, 251 Minn. 224, 87 N. W. (2d) 687; Schweikert v. Peters Sausage Co. 206 Minn. 596, 289 N. W. 828.

We have quite uniformly held that the driver of an automobile on his own side of the road must exercise due care to avoid collisions with other vehicles, even those on his side of the road, and while he may assume that an approaching vehicle on his side of the road will return to its proper lane, he will not be permitted to act on that assumption where the factual basis for it has disappeared. Barrie v. Ackerman, 250

Minn. 1, 83 N. W. (2d) 497; see, also, Katlaba v. Pfeifer, 238 Minn. 298, 56 N. W. (2d) 725; Kime v. Koch, 227 Minn. 372, 35 N. W. (2d) 534; Kapla v. Lehti, 225 Minn. 325, 30 N. W. (2d) 685.

■ The only question involved on this appeal is whether there is sufficient evidence to justify the jury's determination that Lacey was guilty of negligence and that such negligence was a proximate cause of the collision and resulting injuries to plaintiff. The question of plaintiff's contributory negligence was not submitted to the jury. The instructions of the trial court were not challenged. Defendant did not object, or take exception, to the court's instructions and made no motion below for a new trial because of either errors in instructions or procedure. Under the circumstances the trial court's charge has become the law of the case and whether the verdict is sustained by the evidence must now be determined by an application of the rules laid down in the court's charge. We have held that despite errors of fundamental law or controlling principle a trial court's charge to the jury becomes the law of the case and is not subject to attack or review on appeal when such fundamental errors have not been seasonably and adequately called to the attention of the trial court by appropriate objection or exception, or have not, as a minimum requirement, been assigned for the first time as errors in a motion for a new trial.[2]

■ The rule is well established in this state that judgment notwithstanding the verdict will never be granted for errors in either law or procedure committed at the trial. Bosch v. Chicago, M. & St. P. Ry. Co. 131 Minn. 313, 155 N. W. 202; Northwestern Marble & Tile Co. v. Williams, 128 Minn. 514, 151 N. W. 419, L. R. A. 1915D, 1077; Daily v. St. Anthony Falls Water Power Co. 129 Minn. 432, 152 N. W. 840; Eichler v. Equity Farms, Inc. 194 Minn. 8, 259 N. W. 545.

---

[2]Caballero v. Litchfield Wood-Working Co. Inc. 246 Minn. 124, 74 N. W. (2d) 404; Nygren v. Minneapolis St. Ry. Co. 241 Minn. 485, 63 N. W. (2d) 560; Smith v. Otto Hendrickson Post 212, American Legion, 241 Minn. 46, 62 N. W. (2d) 354; Hess v. Koskovitch, 241 Minn. 174, 62 N. W. (2d) 806; Nelson v. Twin City Motor Bus Co. 239 Minn. 276, 58 N. W. (2d) 561; MacIllravie v. St. Barnabas Hospital, 231 Minn. 384, 43 N. W. (2d) 221; Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754; 1 Dunnell, Dig. (3 ed.) § 404; see, also, 2 Youngquist & Blacik, Minnesota Rules Practice, p. 554; 3 Id. p. 184, and Authors' Comments to Rule 59.01, p. 185.

■ As the record stands, the sufficiency of the evidence is our only consideration. Smith v. Gray Motor Co. 169 Minn. 45, 210 N. W. 618; Smith v. Pearson, 44 Minn. 397, 46 N. W. 849.

We have examined the cases cited by defendant Lacey in his brief and have reached the conclusion that they have no decisive application to the facts in the case at bar.

What Lacey did before he saw the Larson car is immaterial. The important question which the jury had to determine upon the issue of Lacey's negligence was whether his failure, after he first saw the Larson car, to reduce his speed, to make timely application of his brakes, and to place his car under reasonable control constituted negligence on his part as a proximate cause, especially in view of his statement that if he had known she was going to turn, or what she was going to do, he could have stopped or could have avoided the collision.

The law which controls in the instant case is definite and somewhat simple. In practically every automobile negligence case where the motion below is confined to a request for judgment notwithstanding the verdict, this court has definitely made it a general rule that the jury's verdict will not be disturbed unless the record discloses no evidence upon which a jury could reasonably make a finding of negligence. In examining the record of the testimony submitted at the trial for the purpose of passing on the motion for judgment notwithstanding the verdict, this court is bound to accept the testimony most favorable to the prevailing party. Merritt v. Stuve, 215 Minn. 44, 9 N. W. (2d) 329; Scattergood v. Keil, 233 Minn. 340, 45 N. W. (2d) 650.

We conclude from the record as submitted that it discloses ample and sufficient evidence to support the jury's finding of negligence.

Affirmed.

Mr. Chief Justice Dell took no part in the consideration or decision of this case.