Hubert H. Humphrey, III, Atty. Gen., Jane A. McPeak, St. Paul City Atty., Virginia D. Palmer, Deputy City Atty., Christina E. Koehn, Asst. City Atty., St. Paul, for appellant.

L. Charles Peterson, St. Paul, for respondent.

**STATE of Minnesota, CITY OF ST. PAUL, Appellant,**

v.

**Robert J. DITTEL, Respondent.**

**No. C8–90–1429.**

Court of Appeals of Minnesota.

Jan. 8, 1991.

Review Denied March 6, 1991.

Considered and decided by HUSPENI, P.J., and DAVIES and NIERENGARTEN,* JJ.

## OPINION

DAVIES, Judge.

The state appeals from the trial court's suppression of the result of a nonconsensual blood test in a DWI prosecution. The blood test was suppressed on the grounds that, while there was probable cause to suspect respondent of DWI, there was not probable cause to suspect criminally negligent driving. We reverse.

## FACTS

Respondent Robert J. Dittel was involved in a head-on collision at approximately

* Wm. J. Nierengarten, retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

11:45 p.m. on August 27, 1989. Dittel was driving on White Bear Avenue, near its intersection with Arlington Street. White Bear Avenue runs north and south in this area and has two lanes in each direction. Dittel was traveling north at approximately 30–35 m.p.h. Richard Martin, traveling at approximately 45–50 m.p.h., was southbound. The car directly ahead of Martin made an abrupt lane change as Martin started to pass, forcing Martin to swerve to avoid a collision. He crossed the centerline and collided head-on with Dittel's vehicle.

Because Dittel, Martin, and a passenger in Martin's vehicle were taken to the hospital, police at the accident scene were unable to talk to any of the victims. Two independent witnesses told police officers that Martin was speeding, crossed the centerline, and collided head-on with Dittel's vehicle. St. Paul Police Officer Mark R. Ficcadenti, performing the hospital emergency room investigation, detected the odor of alcohol on Dittel's breath and overheard Dittel advise the attending nurse that he had consumed four or five beers before the accident. Officer Ficcadenti read the implied consent advisory to Dittel and requested a blood sample. Dittel refused. Two hours later, hospital personnel informed Officer Ficcadenti that the passenger in Martin's vehicle was near death. Officer Ficcadenti immediately conferred with an officer at police headquarters who had the witness statements. Although these statements seemed to exculpate Dittel as a cause of the accident, Ficcadenti ordered extraction of a blood sample from Dittel. Analysis of the blood sample revealed a blood alcohol level of .15.

Subsequently, the state charged Dittel under the DWI statute, Minn.Stat. § 169.121 (Supp.1989). At a *Rasmussen* hearing, the trial court granted Dittel's motion to suppress the blood test result. The state challenges this suppression.

## ISSUE

Is the taking of a nonconsensual blood test justified on the basis of probable cause to suspect criminal negligence by defendant when, at the time of the test, there is no specific knowledge of defendant's defective driving?

## ANALYSIS

On review of a pretrial suppression order, this court will reverse the determination of the trial court only if an appellant demonstrates clearly and unequivocally that the trial court erred in its judgment and that without a reversal there will be a "critical" impact on the outcome of the case. *State v. Joon Kyu Kim*, 398 N.W.2d 544, 547 (Minn.1987) (citing *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977)). Because suppression of a breath test result indicating a blood alcohol content of .15 will have a critical impact on the trial, the question becomes whether the trial court clearly erred in the suppression.

In *State v. Aguirre*, 295 N.W.2d 79 (Minn.1980), the supreme court stated that warrantless nonconsensual blood test results are admissible in a misdemeanor DWI prosecution where the evidence was obtained at a time when police reasonably believed defendant was guilty of criminal negligence. *Aguirre*, 295 N.W.2d at 82–83. The supreme court reasoned that to bar the evidence in a DWI prosecution when it was clearly admissible in a criminal negligence prosecution would misinterpret the legislative purpose of the implied consent statute which is not to protect drivers involved in serious accidents, but rather

> to protect *ordinary* drivers suspected of driving while under the influence from being subjected to nonconsensual removal of blood even in situations where the Constitution would allow the nonconsensual removal of blood.

*Id.* at 82 (emphasis added).

The question here is whether the *Aguirre* test is satisfied when the information in the hands of the police at the time the blood is taken points to excessive drinking, but does not point to faulty driving.[1]

---

1. In *State v. Speak*, 339 N.W.2d 741, 745 (Minn. 1983), the Minnesota Supreme Court said:

> We need not decide whether it is enough to establish probable cause that a driver who

This question was partially answered in *Tyler v. Comm'r of Public Safety*, 368 N.W.2d 275, 280 (Minn.1985), where the supreme court said:

> It is true that \* \* \* [the police officer] could not point to any objective evidence such as skid marks or any information from eyewitnesses to suggest that Tyler caused the accident. On the other hand, he knew that it was a real possibility that Robertson would die, he had evidence that Tyler was intoxicated, and he knew that there had been a head-on collision of two cars. Head-on collisions involving two cars usually do not occur unless at least one of the drivers is negligent.

We now hold that evidence of probable drunk driving and of an imminent death are enough to satisfy *Aguirre* even in the face of apparently exculpatory evidence as to negligent driving.

First of all, with the United States Supreme Court decision in *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), it became clear that the probable cause requirement is not a constitutional issue. The Minnesota Supreme Court summarized *Neville* as follows:

> As a matter of federal constitutional law, the warrantless removal of blood for a blood alcohol test is clearly permitted if police have probable cause to believe a defendant has committed the offense of DWI and that the removal of the blood is necessary to preserve evidence of the defendant's guilt.

*Tyler*, 368 N.W.2d 275, 278 (Minn.1985) (citing *Neville*, 459 U.S. at 558–64, 103 S.Ct. at 920–23). The *Neville* court noted that *Schmerber v. State of California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), "clearly allows a State to force a person suspected of driving while intoxicated to submit to a blood-alcohol test" so long as no inappropriate force is used in violation of due process rights. *Neville*, 459 U.S. at 559 and *see* n. 9, 103 S.Ct. at 920 and *see* n. 9.

Secondly, simple negligence constitutes the "negligence" element of criminal negligence when there is drunk driving. In order for a jury to convict a defendant of criminal vehicular operation resulting in death, it must find that the defendant operated a motor vehicle:

> (1) in a grossly negligent manner;
>
> (2) *in a negligent manner* while under the influence of alcohol, a controlled substance, or any combination of those elements; or
>
> (3) *in a negligent manner* while having a blood alcohol concentration of 0.10 or more.

Minn.Stat. § 609.21, subd. 1 (1988). (Emphasis added.) No more than simple negligence is required under clauses (2) and (3). *See State v. Van Wert*, 442 N.W.2d 795, 797 (Minn.1989) ("[Under this statute] the state can get a conviction either by showing the single element of gross negligence or by showing two elements: negligence plus intoxication.").

Drunkeness leads to a multitude of driving errors. The Minnesota Supreme Court has recognized that:

> [I]ngestion of alcohol in amounts less than those needed to cause gross outward symptoms of intoxication can have a substantial adverse effect on a driver's judgment.

*State v. Speak*, 339 N.W.2d 741, 745 (Minn. 1983). Drinking before driving can cause extreme inattention and inability to avert an accident. *See State v. Storvick*, 428 N.W.2d 55, 60 (Minn.1988).

The Minnesota Legislature has made it a crime to drive with a blood alcohol content of .10 or more. Minn.Stat. § 169.121, subd. 1 (Supp.1989). Minnesota courts have held that driving while intoxicated *is* negligent behavior: the Minnesota Supreme Court has recognized that "drunken drivers pose a severe threat to the health and safety of the citizens of Minnesota." *Heddan v. Dirkswager*, 336 N.W.2d 54, 63 (Minn. 1983). Driving with a blood alcohol of .10 or more and being involved in a fatal accident thus comes close by itself to constituting criminal negligence, although some measure of "negligent" driving must exist

smells of alcohol has been involved in a fatal accident. In this case there was more \* \* \*.

as well. *See State v. Van Wert,* 442 N.W.2d 795, 797 (Minn.1989).

Therefore, since drunk driving is more likely than not to have contributed to causation, we now hold that it is unnecessary to impose on police officers the burden of sorting out witness accounts and physical evidence while vital evidence (blood alcohol) burns away. The police can presume, for the purpose of the *Aguirre* test, that a driver, if drunk, likely can be shown to have contributed negligently to the occurrence of the accident, and that blood alcohol evidence, therefore, should be preserved. In other words, there are two elements to criminal negligence under paragraphs (2) and (3) of subdivisions 1 to 4 of Minn.Stat. § 609.21 (negligence and intoxication). But there is always probable cause to believe some negligence was present (and can later be proved) if the driver was in fact drunk. Therefore, to preserve the possibility of finding a person guilty of criminal negligence, police must be allowed to preserve evidence of intoxication.

Here the exculpatory evidence from witnesses could easily have been in error. The evidence might also prove to be unpersuasive. A jury might find that excessive drinking rendered impossible proper lookout or the taking of evasive action and that this amounted to negligence.

"Head-on collisions involving two cars usually do not occur unless at least one of the drivers is negligent." *Tyler v. Comm'r of Public Safety,* 368 N.W.2d 275, 280 (Minn.1985). Further,

> the driver of an automobile on his own side of the road must exercise due care to avoid collisions with other vehicles, even those on his side of the road, and while he may assume that an approaching vehicle on his side of the road will return to its proper lane, he will not be permitted to act on that assumption where the factual basis for it has disappeared.

*Coble v. Lacey,* 252 Minn. 423, 432, 90 N.W.2d 314, 321 (1958). Finally,

> [w]hether [a driver] exercised the required degree of care is a fact question for the jury.

*Id.* at 431, 90 N.W.2d 314. While a head-on collision may suggest negligence, whether one or both drivers has been negligent and to what degree may be a close question. Therefore, the result of the forced, nonconsensual blood test here should be admissible in a DWI prosecution because it was obtained on the basis of sufficient probable cause to suspect criminal negligence. That probable cause is based on suspected drunk driving and a possibly fatal accident.

One purpose of the implied consent statute is to avoid violent confrontations between police and suspects by allowing a suspect to refuse testing. Once a blood sample has been taken that does not violate due process concerns, however, the protective purposes of Minn.Stat. § 169.121 have been met and there is neither statutory nor constitutional bar to the admission of the test results in a DWI prosecution.

### DECISION

We reverse the district court's pretrial order suppressing the use in this DWI prosecution of a nonconsensual blood test result which was not forcibly obtained.

Reversed and remanded.